UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
—————————————————————————

TIMOTHY E. LANDO, JR.,

                                        Plaintiff,

                                                                9:18-CV-1472
v.                                                              (TJM/TWD)

ANTHONY J. ANNUCCI, STEVEN A. CLAUDIO,
KENNETH GILBERT, MARGARET MONTFORT-
BALFOUR, JAY MOSS, TAMMY GRONAU,
KENNETH PALMER, BRIAN REED, JASON RHODES,

                                        Defendants.
—————————————————————————

APPEARANCES:                            OF COUNSEL:

TIMOTHY E. LANDO, JR.
Plaintiff, *pro se*
06-A-5781
Marcy Correctional Facility
P.O. Box 3600
Marcy, New York 13403

HON. LETITIA JAMES                      ERIK BOULE PINSONNAULT, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**<u>ORDER AND REPORT-RECOMMENDATION</u>**

On December 20, 2018, Timothy E. Lando, Jr. ("Plaintiff"), an inmate in custody of the

New York State Department of Corrections and Community Supervision ("DOCCS"),

commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting certain DOCCS

personnel implemented conditions of parole that were arbitrary and capricious and violated his

procedural and substantive due process rights.  (Dkt. No. 1.)  On February 14, 2019, the District

Court ordered the following categories of claims survived initial review and required a response: (1) Plaintiff's claims seeking money damages against Defendant Parole Officers Tammy Gronau ("Gronau"), Brian Reed ("Reed"), Jason Rhodes ("Rhodes"), and Deputy Commissioner Steven A. Claudio ("Claudio") in their individual capacities regarding Plaintiff's various special conditions of parole; and (2) Plaintiff's claims seeking injunctive relief against Defendant Acting Commissioner Anthony J. Annucci ("Annucci"), Claudio, Regional Director Kenneth Gilbert ("Gilbert"), Bureau Chief Margaret Montfort-Balfour ("Montfort-Balfour"), Senior Parole Officer Jay Moss ("Moss"), and Senior Parole Officer Kenneth Palmer ("Palmer") in their official capacities regarding those same special conditions.  (Dkt. No. 7.)

In lieu of answering, Defendants Annucci, Claudio, and Gilbert (collectively "Defendants") moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's claims against them.[1]  According to Defendants, Plaintiff has not pled a supervisory liability claim against Claudio and his claim for injunctive relief is moot.  (Dkt. No. 29-1.[2])  Plaintiff opposed the motion.  (Dkt. No. 33.)  The Honorable Thomas J. McAvoy, United States Senior District Judge, referred this motion to the undersigned for a report-recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

For the reasons that follow, the Court recommends Defendants' motion be granted in part and denied in part.

---

[1]  At the time Annucci, Claudio, and Gilbert moved to dismiss, Gronau, Reed, Rhodes, Gilbert, Montfort-Balfour, and Moss had not yet been served.  Their deadline to answer or otherwise respond to the Complaint is currently set as December 6, 2019.  (Dkt. No. 41.)

[2]  Citations to documents on the docket are to the pages the Court's CM/ECF electronic filing system automatically assigns.

## I.     FACTUAL BACKGROUND AND THE PARTIES' DISPUTE [3]

On August 11, 2016, Plaintiff was released from prison into the custody of DOCCS Division of Parole.[4]  (Dkt. No. 1 at ¶ 18.)  Gronau was assigned as Plaintiff's parole officer and served in that capacity until approximately January 2017.  (*Id.* at ¶¶ 18, 33-34.)  Between August 2016 and January 2017, Gronau denied Plaintiff's requests to visit his father in the hospital, have any contact with his children, and attend holiday events with his family–all because they involved children under the age of 18 and would violate the special conditions of parole.  (*Id.* at ¶¶ 20, 22, 30, 32.)

Moreover, Plaintiff asserts Oswego County Family Court Justice James K. Elby issued an order granting him joint custody of his two minor children, visitation with his children while he was incarcerated, and permission to have verbal and written communication with his minor children.  (*Id.* at ¶¶ 21.)  Gronau was aware of the Family Court's Order but nevertheless imposed special condition 13(j), which prohibited him from having contact with his children or their mother.  (*Id.* at ¶¶ 22, 24.)

Gronau also imposed a special condition requiring Plaintiff to submit to GPS monitoring and arrived at his place of work to issue the GPS monitor.  (*Id.* at ¶¶ 25, 27.)  According to Plaintiff, Gronau made disparaging remarks to him on a regular basis.  (*Id.* at ¶¶ 28-29, 31, 33.)

---

[3]  The following facts are derived from the complaint and are accepted as true for the purposes of deciding the pending motion.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The Court also considers the exhibits included with the complaint to the extent they are relevant to the incidents at issue.  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (a complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference").

[4]  Plaintiff was convicted of First-Degree Rape in violation of New York State Penal Law § 130.35(1) in Onondaga County Court on September 29, 2006, following his plea of guilty.  (Dkt. No. 7 at 5.)

In January 2017, Reed became Plaintiff's parole officer.  (*Id*. at ¶ 34.)  Despite his requests, Reed did not remove him from GPS monitoring, or allow him to drive or visit with his children.  (*Id*. at ¶ 35-37.)

In May 2017, Rhodes became Plaintiff's parole officer and maintained the same restrictions as the previous parole officers.  (*Id*. at ¶ 39, 41.)  Around the same time, Plaintiff started a romantic relationship with a woman.  (*Id*. at ¶¶ 38, 41.)  In June 2017, Rhodes promised Plaintiff he could reside with his girlfriend in "three months," however, Rhodes later denied his subsequent requests to live with her in September and December 2017.  (*Id*. at ¶¶ 43, 45, 47.)  Rhodes also denied Plaintiff's requests to attend family holiday events in November and December 2017, because children under the age of 18 would be present.  (*Id*. at ¶ 46, 48.)  In January 2018, Rhodes imposed a new restriction on Plaintiff's ability to enter his girlfriend's residence.  (*Id*. at ¶¶ 49.)  Rhodes also denied Plaintiff's request to have the restriction regarding visitation with his children lifted.  (*Id*. at ¶ 50.)

In February 2018, Plaintiff's girlfriend and mother wrote letters to Annucci, the DOCCS Commissioner, "to address issues with parole isolating and restricting plaintiff from maintaining a relationship with family that love and support him."  (*Id*. at ¶ 51.)  Claudio, the DOCCS Deputy Commissioner, "responded to the [letters], but failed to consider the effect on the plaintiff and the impact on his rehabilitative needs to be successful in society."  (*Id*.)

In May 2018, Plaintiff violated his parole when he went to a bar and broke his curfew.  (*Id*. at ¶ 52.)  He was ordered to serve a 24-month time assessment for his violation, and he remains incarcerated today.  (*Id*.)

Based on these allegations, Plaintiff seeks injunctive relief to remove the following special conditions imposed upon him that allegedly restrict his ability to associate with his

family: special condition 13(j), which prohibits his contact with his children; special condition

13(z1-z10), which provides for GPS monitoring; special condition 13(aa), which imposes a

curfew; and special condition 13(bb), which restricts his ability to visit his girlfriend's (now

wife) residence.  Plaintiff also seeks monetary damages against certain parole officers in their

individual capacities and against Claudio as a supervisory official.

As noted above, only Annucci, Claudio, and Gilbert have moved to dismiss at this time

regarding Plaintiff's official capacity claims seeking an injunction and his individual capacity

claim against Claudio.  (Dkt. No. 29-1.)  Specifically, Defendants argue that, because Plaintiff

violated his conditions of parole and is currently incarcerated under a time assessment, his

special conditions of release no longer apply, and his claim for injunctive relief is moot.  (*Id*. at

9-10.)  Defendants further argue Plaintiff has an adequate remedy in state law—in the form of an

Article 78 proceeding to challenge the special conditions—and thus, injunctive relief is not

proper.  (*Id*. at 11-12.)  Furthermore, Claudio argues Plaintiff has failed to plausibly allege he

was personally involved in the underlying constitutional violations and, in any event, he is

entitled to qualified immunity.  (*Id*. at 12-15.)

## II.    DISCUSSION

### A.    Standard of Review

A defendant may move to dismiss a complaint for "failure to state a claim upon which

relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The motion

tests the legal sufficiency of the complaint and whether it conforms to Rule 8(a)(2) of the Federal

Rules of Civil Procedure.  To survive a motion to dismiss, the complaint must "contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Id*. at 679 (internal citation and punctuation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears there are not "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.  While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  In other words, a complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice.  *Id*. (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest."  *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*).  Where a *pro se* complaint fails to state a cause of action, the court generally

"should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "[t]he problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.*

### B. Injunctive Relief

As noted above, Plaintiff seeks injunctive relief to remove certain special conditions imposed upon him as a condition of his parole. Defendants argue any special conditions of parole have been necessarily extinguished because Plaintiff was reincarcerated after he was found to have violated the conditions of his parole. (Dkt. No. 29-1 at 9-10.) In other words, Defendants argue the challenged special conditions have been eliminated as a matter of law following his reincarceration. Defendants, however, do not point to any statute or New York rule providing that special conditions of parole are automatically revoked.

Rather, Defendants heavily rely upon *Maldonado v. Fischer*, No. 11-CV-1091SR, 2013 WL 5487429 (W.D.N.Y. Sept. 30, 2013), for the proposition that Plaintiff's conditions of release have been revoked as a result of a subsequent criminal conviction. (Dkt. No. 29-1 at 10 (citing *Maldonado*, 2013 WL 5487429, at *4) (noting "[s]hould plaintiff be granted parole at some point in the future, and should parole officials impose similar conditions, plaintiff may seek review of those conditions through an article 78 petition or another action in this Court").) *Maldonado*, however, is different in one critical respect, namely, the plaintiff in *Maldonado* was reincarcerated on a *new* felony conviction—not a violation of the conditions of his parole. *Id.* (stating he was convicted for 3rd degree larceny).[5]

---

[5] Likewise, the two other cases Defendants cite, *Robinson v. New York*, 550 F. App'x 63, 64 (2d Cir. 2014), and *Gordon v. Semrug*, No. 14-CV-324S, 2017 WL 2241966, at *3 (W.D.N.Y. May

Such a distinction is important because the statutes cited in *Maldonado* supporting the proposition that Plaintiff's parole conditions were extinguished by operation of law deal specifically—and only—with the impact of post-release supervision after a conviction for a new felony. *See* 9 N.Y.C.R.R. 8004.3(g) (noting a person's "post release supervision" is "*revok[ed]*" in the event of a conviction of a *new felony*."); Executive Law 259–i(3)(d)(iii) (stating a "new felony committed while under such supervision" "*revoke[s]*" a person's post-release supervision). The use of the word "revoke" is significant in the context of a new *felony conviction* when compared to other provisions in New York law regarding a *violation* of post-release supervision conditions where the statute provides the term of post release supervision is merely "*interrupt[ed]*" upon the imposition of a time assessment "until the person is *restored* to post-release supervision." N.Y. Penal Law § 70.45(d) (emphasis added); N.Y. Penal Law § 70.40(3)(b). In other words, a time assessment after a violation of parole interrupts the period of post-release supervision (meaning it will be restored with the same general and special conditions after the time assessment), whereas a new felony permanently terminates the period of post-release supervision because the person is then subject to a new criminal sentence.

Supporting this interpretation of New York law is each of the special conditions appended to Plaintiff's Complaint. To that end, each indicates it "will remain in effect until the termination of my legal period of supervision" on May 10, 2021, "[u]nless otherwise amended, in writing by the Division of Parole." (Dkt. No. 1 at 30, 31, 32, 33.[6]) Defendants have not suggested the Division of Parole has amended or removed any of these conditions.

---

23, 2017), are each inapposite since the plaintiffs in those cases were no longer subject to any condition of parole because their supervised release term had expired by virtue of the passage of time.

[6] The Court notes one of the conditions lists May 12, 2021, as the final date. (Dkt. No. 1 at 31.)

Accordingly, though the Court acknowledges New York law does not provide a clear answer with respect to whether Plaintiff's special conditions will apply when he is released from his current time assessment and returned to his term of post-release supervision, Defendants have not established such a result is a foregone conclusion. Thus, the Court finds Plaintiff's claims for injunctive relief are not moot and recommends Defendants' motion to dismiss be denied in this respect.

In addition, Defendants contend federal injunctive relief is unavailable in this case because C.P.L.R. Article 78 provides Plaintiff with an adequate remedy at law. (Dkt. No. 29-1 at 11-12.) To that end, Article 78 provides a process to challenge, review or compel certain official action and has been used to consider the propriety of conditions of parole. *See Ariola v. New York State Div. of Parole*, 62 A.D.3d 1228, 1229, 880 N.Y.S.2d 367 (2009). Defendants' contention, however, confuses the issue of adequacy of a legal remedy, which would obviate the need for injunctive relief, with that of adequacy of a state remedy, which would cause a federal court to consider the doctrine of abstention. *See, e.g.*, *Billington v. Hayduk*, 439 F. Supp. 971, 973 (S.D.N.Y. 1977) (rejecting an argument that Article 78 is an "adequate remedy at law" such that an injunction is not warranted). In other words, with respect to the standard for an injunction, the existence of an alternative state remedy is irrelevant.

In sum, the Court finds Defendants' arguments to dismiss Plaintiff's claim for injunctive relief unpersuasive. Accordingly, the Court recommends Defendants' motion be denied on this ground.

### C.    Supervisory Liability

Plaintiff's claim against Claudio is pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive

rights [but] provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To state a cognizable claim under Section 1983, a complaint must allege "(1) 'that some person has deprived [the plaintiff] of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)) (alteration omitted).

Additionally, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). Thus, to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). With respect to individuals sued based on their supervisory capacities (like Claudio in this action), "vicarious liability is inapplicable to . . . [Section] 1983 suits." *Iqbal*, 556 U.S. at 676.

In this circuit, a supervisory official is personally involved in a constitutional violation if he or she: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) was grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to

act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[7]

Claudio argues Plaintiff has failed to allege facts necessary to establish he was involved in the implementation or execution of the special conditions of parole.  Specifically, Plaintiff's only allegations regarding Claudio is that he received letters from his girlfriend and mother about the restrictions on his ability to interact with his family, but Claudio failed to rectify the situation. Thus, according to Claudio, Plaintiff's complaint fails to assert a claim against him in his individual capacity.

Plaintiff argues his allegations relative to Claudio fall under the second *Colon* factor, namely where a "defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong."  (Dkt. No. 33 at 13-14 (citing *Colon*, 58 F.3d at 873).)  However, courts have cautioned that this factor "should not be too broadly construed," for at least two reasons.  *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002).  First, "to allow a mere letter to an official to impose supervisory liability would permit an inmate to place liability on individuals who had no authority over the situation complained of merely by sending letters." *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002).  Second, the origin of this second example, *United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2d Cir. 1975), involved a supervisory official who was mandated by regulation to receive reports of certain prison conditions.  Accordingly, it is well established in this circuit that, "the allegation that a

---

[7]  "*Iqbal* has . . . engendered conflict . . . about the continuing vitality of the supervisory liability test set forth in *Colon*," *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012), however, the Second Circuit has not resolved the conflict.  *See, e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) ("We express no view on the extent to which the Supreme Court's decision in *Ashcroft v. Iqbal* . . . 'may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations.'" (citation omitted)).

supervisory official ignored a prisoner's letter protesting unconstitutional conduct is not itself

sufficient to allege the personal involvement of the official so as to create liability under § 1983."

*Ward v. LeClaire*, No. 07–CV–6145, 2008 WL 3851831, at *3 (W.D.N.Y. Aug.14, 2008)

(collecting cases); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) (collecting

cases).

> Here, the only allegation regarding Claudio is Paragraph 51, which states as follows:

>> On or about February 2018, plaintiff's fiancée and his mother, Susan Rattray wrote letters to Anthony J. Annucci, Acting Commissioner of DOCCS (defendant No. 1) to address issues with parole isolating and restricting plaintiff from maintaining a relationship with family that love and support him; Deputy Commissioner acting on behalf of Annucci, Steven A. Claudio responded to the complaint, but failed to consider the effect on the plaintiff and the impact on his rehabilitative needs to be successful in society.

(Dkt. No. 1 at ¶ 51.)  Lacking in this single conclusory paragraph is any indication about the

substance of the letters, the substance of Claudio's response, or any other details besides a mere

acknowledgment that Plaintiff's family complained, and nothing materialized from those

complaints.  His allegation, importantly, fails to explain the extent Claudio was informed of each

of the specific challenged special conditions but is rather impermissibly vague.  Standing alone,

this allegation is insufficient to impose individual liability.

> Accordingly, the Court recommends Plaintiff's claim against Claudio be dismissed.  *C.f.

*Doe v. Lima*, 270 F. Supp. 3d 684, 714 (S.D.N.Y. 2017), *aff'd sub nom. Doe v. Cappiello*, 758 F.

App'x 181 (2d Cir. 2019) (finding supervisory liability where the official "ratif[ied]" the

underlying decision and "agreed" with the course of action).  However, the Court also

recommends providing Plaintiff an opportunity to amend his complaint to address the substance

of his family's letters and Claudio's response.

### III.     CONCLUSION

For the reasons set forth above, the Court recommends Defendants' motion to dismiss

(Dkt. No. 29) be denied in part and granted in part.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss (Dkt. No. 29)

be **DENIED** as it relates to Plaintiff's claims for injunctive relief; and it is further

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss (Dkt. No. 29) be

**GRANTED** without prejudice as it relates to Plaintiff's claim against Defendant Steven A.

Claudio in his individual capacity; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein in accordance

with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to

file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of

the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS**

**WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

---

[8]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Dated: November 25, 2019
      Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge

2013 WL 5487429
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Angel MALDONADO, Plaintiff,

v.

Brian FISCHER, Commissioner, New York State
Department of Correctional Services & Community
Supervision ("NYSDOCCS"), Andrea W. Evans,
Chairwoman & CEO, New York State Division
of Parole, and Grant Scriven, Bureau Chief,
New York State Division of Parole, Defendants.

No. 11–CV–1091Sr.
|
Sept. 30, 2013.

**Attorneys and Law Firms**

Angel Maldonado, Malone, NY, pro se.

Benjamin K. Ahlstrom, New York State Attorney General's
Office, Buffalo, NY, for Defendants.

### *DECISION AND ORDER*

H. KENNETH SCHROEDER, JR., United States Magistrate
Judge.

**\*1** Pursuant to 28 U.S.C. § 636(c), the parties have
consented to the assignment of this case to the undersigned
to conduct all proceedings in this case, including the entry of
final judgment. Dkt. # 15.

### *Procedural Background*

Plaintiff commenced this action, *pro se*, pursuant to 42 U.S.C.
§ 1983, seeking to enjoin defendants from continuing to
impose sex offender conditions to his parole. Dkt. # 1. Upon
review pursuant to 28 U.S.C. § 1915, plaintiff's due process
claim challenging the substance, *i.e.,* the nature and extent, of
the conditions of parole imposed upon plaintiff were allowed
to proceed. Dkt. # 5. Specifically, the Court concluded that
plaintiff's

allegations concerning the restrictions and resulting
hardships that the conditions imposed on him have had (see
Docket No. 1, p. 10, ¶ 20 [enumerating restrictions upon
plaintiff's relationship with his family allegedly caused by
conditions of parole] ) "sufficiently allege[ ] a due process
claim regarding the *substance* of the special conditions at
issue here and the basis for their imposition."

Dkt. # 5, p. 9, *quoting Robinson v. New York,* 09–cv–455,
2010 U .S. Dist. LEXIS 144553, at \*26 (N.D.N.Y. March
26, 2010) (emphasis added), *citing Boddie v. New York State
Div. of Parole,* 285 F.Supp.2d 421, 428–20 (S.D.N.Y.2003).
In *Boddie,* the court determined that plaintiff's liberty interest
was "limited to not being denied parole for arbitrary or
impermissible reasons." 285 F.Supp.2d at 428. "Thus, the
imposition of conditions—whether imposed prior to or
subsequent to release, by the parole board or a field parole
officer—must be upheld as long as they are reasonably related
to a parolee's past conduct, are not arbitrary and capricious,
and are designed to deter recidivism and prevent further
offenses. *Robinson,* 2010 U.S. Dist. LEXIS 144553, at \*14.

Defendants move to dismiss plaintiff's complaint for lack
of subject matter jurisdiction on the grounds of mootness
following plaintiff's recent conviction of third degree grand
larceny, resulting in an indeterminate sentence of 3½ to 7
years incarceration. Dkt. # 9. Plaintiff opposes the motion
on the ground that he is likely to be subjected to the same
conditions of release when he is paroled on his most recent
conviction. Dkt. # 16.

Plaintiff moved to amend his complaint to assert his claims
against the defendants in their individual capacities and to
seek monetary damages as well as injunctive relief. Dkt.11 &
13. Plaintiff also seeks to add a substantive due process claim
and a cause of action alleging violation of his first amendment
rights to free association. Dkt.11 & 13.

Defendants move to dismiss plaintiff's amended complaint to
the extent it seeks injunctive relief on the grounds of mootness
and to dismiss plaintiff's claims for monetary damages for
failure to allege the personal involvement of any defendant;
failure to state a plausible substantive due process or right to
association claim; and immunity. Dkt. # 17.

**\*2** In response, plaintiff seeks to amend his complaint to
add Parole Officer Susanna Mattingly as a defendant in this
action. Dkt. # 24. Plaintiff claims that he was unaware of
Parole Officer Mattingly's involvement in the imposition of

the special conditions he is challenging until he received discovery from defendants in another action pending in this district, 11–CV–717, on February 18, 2013. Dkt. # 24.

Defendants oppose plaintiff's request to add Susanna Mattingly as a defendant on the ground that plaintiff failed to attach a proposed amended pleading to his request and on the ground that plaintiff failed to include Ms. Mattingly in his prior motion to amend despite his prior knowledge of her involvement. Dkt. # 27.

*Factual Background*

Plaintiff pled guilty to a misdemeanor charge of sexual misconduct pursuant to N.Y. Penal Law § 130.20(2) and was sentenced to three years of probation on July 8, 1997. Dkt. # 1 & Dkt. # 25, p. 16. Plaintiff's probation was discharged on March 16, 1999. Dkt. # 1, ¶ 8.

In 2002, the New York State Legislature amended New York's Penal Law to include a conviction under Penal Law § 130.20 within the definition of a sex offense, thereby triggering the requirements of New York's Sex Offender Registration Act. *2002 Sess. Law News of N.Y. Ch. 11* (S.6263–A) (McKinney's).

On April 25, 2003, plaintiff was found guilty of 1st degree scheme to defraud, 3rd degree grand larceny, attempted petit larceny, compounding a crime, 2nd degree harassment, tampering with physical evidence, bribing a witness, criminal impersonation, aggravated harassment and 2nd degree bail jumping. Dkt. # 1, ¶ 2 & pp. 29–32. Plaintiff was released on parole on May 28, 2009 after serving approximately six years in prison. Dkt. # 1, ¶ 4. Plaintiff's period of supervision extends to July 31, 2017. Dkt. # 1, p. 11.

Plaintiff objects to the following conditions of parole, commonly referred to as sex offender conditions:

8. I will attend, participate in and complete sex offender counseling/treatment as directed by the Parole Officer.

10. I will comply with all case specific sex offender conditions to be imposed by the Parole Officer.

16. I will participate in the Division of Parole's polygraph program as directed by my Parole Officer....

17. I will not use or possess any medications or supplements designed or intended for the purpose of enhancing sexual performance or treating erectile dysfunction without the written permission of my Parole Officer and the approval of his/her Area Supervisor.

26. I will notify my Parole Officer when I establish a significant relationship and will inform the other party of my prior criminal offenses or current offenses which relate to sexually offending behavior.

28. I will not call any sexually explicit telephone services & will submit copies of telephone bills to the Parole Officer upon request.

29. I will not purchase, view or be in possession of any pornographic materials or content, including but not limited to: erotic magazines, video tapes/DVDs, photographs, x-rated films, television programs and pay per-view programs....

**\*3** 30. I will not have any premium channels on any of the televisions that I have access to in my residence. Such premium channels include but are not limited to, The Movie Channel, Showtime, Cinemax and HBO.

31. I will not purchase, use or possess a computer, camera, video cameras, related photography equipment, VCR player/recorder or DVD player/recorder without the prior knowledge and permission of my Parole Officer.

32. I will not frequent areas of pornographic activity including but not limited to adult video/book stores, sex shops, massage parlors and topless bars.

33. I will not use, participate in or gain access to any online computer service or internet service provider.

34. I will not enter or be within 25 yards of places where any person under the age of 18 may congregate without prior approval from my Parole Officer. This includes but is not limited to schools, playgrounds, video arcades, sports fields, shopping malls and movie theaters.

35. I will not have children's toys, video games, video tapes, DVDs or excessive amounts of candy in my possession without the prior knowledge and permission of my Parole Officer.

Dkt. # 1, pp. 11–15 & 24.

By letter dated October 22, 2009, Dominic A. Dispenza, LCSW–R, completed a sexual offender evaluation and risk assessment of plaintiff and determined that plaintiff

> displayed symptoms of an antisocial personality disorder. He was deceitful, took no responsibility for his behaviors, showed no remorse, and completely lacked empathy. Furthermore, he has demonstrated impulsivity, aggressiveness, and a reckless disregard for the safety of others and himself.
>
> 2. Mr. Maldonado claimed that he does not have a sex offense problem and denied the possibility of relapse. He denied he committed a sexual offense and claimed to this evaluator that he had married his victim in Puerto Rico prior to his conviction and she had their child when she was 17 years old. Mr. Maldonado is reported to have told his probation officer that he did not marry this victim until after he had been convicted of his offense against her.

\* \* \*

> 4. Mr. Maldonado demonstrated that he is not amenable to sexual offender treatment. He displayed evasiveness, a superficial manner, hostility, and a lack of cooperation during this evaluation. Furthermore, he was previously expelled from another sex offender treatment program and appears to have tried to hide that fact during this evaluation.

Dkt. # 25, p. 27. Plaintiff's special conditions of release were renewed upon plaintiff's release from incarceration following violations of the terms of his parole on February 24, 2010 and September 29, 2010. Dkt. # 1, ¶ 6.

By letters dated September 16, 2011 and October 31, 2011, Grant Scriven, Bureau Chief for NYSDOCCS and Angela B. Jiminez, Deputy Commissioner of NYSDOCCS advised plaintiff that

> Commissioner Fischer has asked me to respond to your letter to him regarding your Parole supervision. In your letter you indicate that you are trying to get help and referenced your three violations of the conditions of your release since May of 2009.
>
> **\*4** You have adamantly expressed opposition to being supervised as a sex offender and your sex offender conditions of release. It should be noted that those conditions were imposed by the Board of Parole due to your conviction of Sexual Misconduct in 1996 as reduced from

original charges of Rape, 3rd Degree, and due to your guilty plea.

\* \* \*

Dkt. # 1, pp. 25 & 26. By letter dated August 14, 2012, Ms. Jiminez advised plaintiff that

> Commissioner Fischer has asked me to respond to your letter to him dated June 12, 2012 regarding removal of sex offender conditions. I would note that you remain housed at Erie County Correctional Facility due to outstanding felony charges and are awaiting trial.
>
> You previously sent a letter referencing similar dissatisfaction with the conditions of release. The conditions of your release were established by the Board of Parole following a review of your criminal, institutional, and social history. You will be expected to comply with the imposed conditions of release upon your release from local custody.

\* \* \*

Dkt. # 25, p. 21.

On August 21, 2012, plaintiff was convicted of 3rd degree grand larceny following a jury trial and sentenced as a second felony offender to an indeterminate sentence of of 3½ to 7 years incarceration. Dkt. # 18, ¶¶ 8–9.

*Discussion and Analysis*

**Injunctive Relief**
Plaintiff's complaint seeks relief from the sex offender conditions imposed upon him as special conditions of parole. However, plaintiff's parole status has been revoked as a matter of law following his most recent felony conviction. Executive Law 259–i(3)(d)(iii) & 9 N.Y.C.R.R. 8004.3(g). As plaintiff is no longer subject to special conditions of parole, his request for injunctive relief is moot. *See Martin–Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir.1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."). Should plaintiff be granted parole at some point in the future, and should parole officials impose similar conditions, plaintiff may seek review of those conditions through an article 78 petition or another action in this Court.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**Leave to Amend the Complaint—Fed.R.Civ.P 15(a)**

Fed.R.Civ.P. 15(a) provides that a party may amend a pleading by leave of court or by written consent of the adverse party. Leave to amend is to be "freely granted" unless the party seeking leave has acted in bad faith, there has been an undue delay in seeking leave, there will be unfair prejudice to the opposing party if leave is granted, or the proposed amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981); Fed.R.Civ.P.15(a). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993). "Absent a showing that significant additional discovery burdens will be incurred or that the trial of the matter will be significantly delayed, amendment should be permitted." *W.R. Grace & Co. v. Zotos Int'l, Inc.,* 98–CV–838, 2000 WL 1843282 (W.D.N.Y. Nov.2, 2000). The decision to grant or deny a motion for leave to amend a pleading is within the discretion of the district court. *Foman,* 371 U.S. at 182.

**\*5** "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Lucente v. Int'l Business Machines, Corp.,* 310 F.3d 243, 258 (2d Cir.2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678, *quoting Twombly,* 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' " *Id., quoting Twombly,* 550 U.S. at 555.

*Personal Involvement*

Plaintiff seeks to amend his complaint to assert a monetary claim for damages against defendants Fischer, Evans and Scriven in their individual capacities regarding the nature and extent of the conditions imposed and their relation to his offenses. Dkt. # 12.

Defendants argue that the proposed amendment is futile because the individual defendants lack personal involvement in the imposition of the special conditions upon plaintiff and because the special conditions were reasonably related to plaintiff's criminal history. Dkt. # 17–1, pp. 10 & 14–16.

Plaintiff responds that defendants were personally involved because they were made aware of a constitutional violation by virtue of plaintiff's complaints, but failed to correct it. Dkt. # 24, pp. 21–23.

"Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal,* 129 S.Ct. at 1948. Thus, it is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir.2001); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060,1065 (2d Cir.1989). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *Colon,* 58 F.3d at 873.

**\*6** In the instant case, plaintiff's complaint and amended complaint fails to allege any facts to suggest the personal involvement of NYSDOCCS' Commissioner Fischer, Division of Parole Chairwoman Evans or Division of Parole Bureau Chief Scriven in the imposition of the special conditions of parole plaintiff challenges. In his memorandum in opposition to defendants' motion to dismiss, plaintiff argues that Parole Bureau Chief Scriven failed to investigate

plaintiff's complaints and that Commissioner Fischer and Chairwoman Evans failed to remedy the violation after receiving notice that unconstitutional acts were occurring. Dkt. # 24, pp. 22–23. More specifically, plaintiff argues that

> Mr. Fischer just pawned off the plaintiff's request for help to his Deputy Superintendent who only wrote the plaintiff back explaining why he was given the special conditions. No real investigation was done in this case at all. As far as Ms. Evans is concerned she never even wrote the plaintiff back.

Dkt. # 24, p. 23. The record before the Court suggests that plaintiff wrote letters to Commissioner Fischer expressing his opposition to the sex offender conditions imposed upon his release and that Chief Scriven responded to one of those letters noting that those conditions were imposed by the Board of Parole due to plaintiff's conviction of sexual misconduct. Dkt. # 1, pp. 21, 25 & 26.

Generally, however, "the allegation that a supervisory official ignored a prisoner's letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the official so as to create liability under § 1983." *Ward v. LeClaire,* No. 07–CV–6145, 2008 WL 3851831, at *3 (W.D.N.Y. Aug.14, 2008) (collecting cases); *See Mateo v. Fischer,* 682 F.Supp.2d 423, 430 (S.D.N.Y.2010) (collecting cases). "[T]o allow a mere letter to an official to impose supervisory liability would permit an inmate to place liability on individuals who had no authority over the situation complained of merely by sending letters. *Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002); *see Walker v. Pataro,* No. 99CIV.4607, 2002 WL 664040, at *12 (S.D.N.Y. April 23, 2002) ("if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability."). Accordingly, plaintiff's motion to amend his complaint to allege individual liability against defendants Fischer, Evans and Scriven is denied for lack of plausible allegations of personal involvement.

**Leave to Add Defendants—Fed.R.Civ.P 21**
Plaintiff seeks to add Parole Officer Susanna Mattingly as a defendant in this action and to seek damages against her for a violation of his procedural and substantive due process rights and his right to association. Dkt. # 24. In support of his request, plaintiff argues that

> **\*7** Parole Officer Mattingly was one of the Parole Officers that had given the plaintiff the sex offender conditions as well as one of the Parole Officers who has been telling prospective landlords that the plaintiff is a registered sex offender. She had also given the plaintiff the condition banning him from having any contact with Valerie Cole who is the plaintiff's wife.

Dkt. # 24, p. 19.

Defendants oppose plaintiff's request to add Susanna Mattingly as a defendant on the ground that plaintiff failed to attach a proposed amended pleading to his request and on the ground that plaintiff failed to include Ms. Mattingly in his prior motion to amend despite his prior knowledge of her involvement. Dkt. # 27.

Although Fed.R.Civ.P. 15(a) generally governs the amendment of complaints, where the proposed amendment seeks to add new defendants, Fed.R.Civ.P. 21 governs. *Rush v. Artuz,* 00CIV3436, 2001 WL 1313465, at *5 (S.D.N.Y. Oct.26, 2001). Rule 21 states that "[p]arties may be ... added by order of the court on motion of any party ... at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21. "In deciding whether to allow joinder, the Court is guided by the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Rush,* 2001 WL 1313465, at *5 (internal quotation omitted); *see Clarke v. Fonix Corp.,* 98 CIV 6116, 1999 WL 105031, at *6 (S.D.N.Y. March 1, 1999), *aff'd* 199 F.3d 1321 (2d Cir.1999).

The Court cannot review plaintiff's request to amend his complaint to add Parole Officer Susanna Mattingly as a defendant because plaintiff has failed to provide the Court with a proposed amended complaint setting forth the factual

allegations for such a claim. As set forth in Rule 15(a) of the Local Rules of Civil Procedure:

> A movant seeking to amend or supplement a pleading must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion. The proposed amended pleading must be a complete pleading superseding the original pleading in all respects. No portion of the prior pleading shall be incorporated into the proposed amended pleading by reference.

Absent a proposed amended complaint alleging a factual basis for plaintiff's complaint against his parole officer, the Court is left with an understanding of the legal claim plaintiff seeks to raise, but no facts which would support such a claim. If, however, plaintiff can plausibly allege a factual basis to suggest that Parole Officer Susanna Mattingly imposed upon plaintiff conditions of release which were arbitrary and capricious because they were not reasonably related to plaintiff's past conduct or designed to deter recidivism

and prevent further offenses, plaintiff may move, within 60 days of the entry of this Decision and Order, to amend his complaint to add Parole Officer Susanna Mattingly as a defendant in this action.

### CONCLUSION

Based on the foregoing, defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction on the grounds of mootness following plaintiff's incarceration on an unrelated criminal conviction (Dkt.# 9), is granted; plaintiff's motion to amend his complaint to allege individual liability against defendants Fischer, Evans and Scriven (Dkt.11 & 13), is denied; defendants' motion to dismiss the amended complaint (Dkt.# 17), is granted; and plaintiff is granted permission to move, within 60 days of the entry of this Decision and Order, to amend the complaint to add Parole Officer Susanna Mattingly as a defendant in this action.

**\*8  SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 5487429

---

**End of Document**
© 2019 Thomson Reuters. No claim to original U.S. Government Works.

550 Fed.Appx. 63
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE(WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals,
Second Circuit.

David ROBINSON, Jr., Plaintiff–Appellant,
v.
State of NEW YORK, George Alexander,
Chairman, New York State Division of Parole,
in his individual and official capacity, Michael
Fork, Bureau Chief, in his individual and official
capacity, Ms. Benjamin, Senior Parole Officer,
in his individual and official capacity, Mr.
Fernandez, Parole Officer, in his individual
and official capacity, Defendants–Appellees.

No. 13–1173–cv.
|
Jan. 16, 2014.

Appeal from a judgment of the United States District Court
for the Northern District of New York (Sharpe, J.).
UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED that the
appeal is DISMISSED.

### Attorneys and Law Firms

David Robinson, Jr., pro se, Rockaway Beach, NY, for
Plaintiff–Appellant.

**\*64** Andrew B. Ayers, Assistant Solicitor General, New
York State Office of the Attorney General, Albany, NY, for
Defendants–Appellees.

PRESENT: ROBERT A. KATZMANN, Chief Judge,
CHESTER J. STRAUB and RAYMOND J. LOHIER, JR.,
Circuit Judges.

### SUMMARY ORDER

Appellant David Robinson, Jr., proceeding *pro se,* appeals
from the district court's grant of summary judgment
dismissing his claims for injunctive and declaratory relief
with respect to the imposition of a special condition of
supervised release limiting his ability to possess or acquire
a driver's license and to operate a vehicle. We assume the
parties' familiarity with the underlying facts, the procedural
history of the case, and the issues on appeal.

"A case becomes moot when it no longer satisfies the 'case-
or-controversy' requirement of Article III, Section 2 of the
Constitution." *United States v. Mercurris,* 192 F.3d 290, 293
(2d Cir.1999). "In order to satisfy the case-or-controversy
requirement, a party must, at all stages of the litigation, have
an actual injury which is likely to be redressed by a favorable
judicial decision." *Id.; see also British Int'l Ins. Co. v. Seguros
La Republica, S.A.,* 354 F.3d 120, 122 (2d Cir.2003) ("[A]
case is moot when ... the parties lack a legally cognizable
interest in the outcome." (quoting *Powell v. McCormack,* 395
U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969))).

Robinson's term of supervised release expired in October
2013, while his appeal was pending. Because Robinson
seeks only injunctive and declaratory relief regarding the
conditions imposed on his now-terminated term of supervised
release, his action is moot. *See Mercurris,* 192 F.3d at 293–
94 (dismissing as moot an appeal of an aggravated felony
sentencing enhancement after the defendant completed his
prison term); *see also Sudler v. City of New York,* 689 F.3d
159, 177–78 (2d Cir.2012) (finding plaintiffs' request for
declaratory judgment moot after they had been released from
prison).

We have considered Robinson's remaining arguments and
find them to be without merit. Accordingly, we **DISMISS** the
appeal as moot.

### All Citations

550 Fed.Appx. 63

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:18-cv-01472-TJM-TWD   Document 45   Filed 11/25/19   Page 23 of 33

Gordon v. Semrug, Not Reported in Fed. Supp. (2017)

2017 WL 2241966
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Eric M. GORDON, Plaintiff,

v.

Parole Officer SEMRUG, Parole
Officer Himmelsboch, Parole Specialist
Cynthia Mooney, Defendants.

14-CV-324S
|
Signed 05/23/2017

**Attorneys and Law Firms**

Eric M. Gordon, Buffalo, NY, pro se.

George Michael Zimmermann, Office of the New York State
Attorney General, Buffalo, NY, for Defendants.

**DECISION AND ORDER**

WILLIAM M. SKRETNY, United States District Court
Judge

## I. INTRODUCTION

 *1  In this action under 42 U.S.C. § 1983, *pro se* Plaintiff
Eric M. Gordon brings suit against Defendants Martin Semrau
and Melissa Himmelsbach,[1] who served as Plaintiff's parole
officers, and Defendant Cynthia Mooney, who served as the
Parole Specialist at a hearing where it was determined that
Plaintiff had violated his parole, alleging that Defendants
violated his constitutional rights by designating him as a
discretionary sex offender.[2] Presently before this Court is
Plaintiff's Motion for Summary Judgment and Defendants'
motion for the same relief. For the following reasons,
Defendants' motion is granted and Plaintiff's motion is
denied.

## II. BACKGROUND [3]

This suit was initially filed on April 29, 2014. At that time,
Plaintiff was an inmate of the Franklin Correctional Facility,
serving out the remainder of his sentence for violation of the

terms of his parole. Defendants Semrau, Himmelsbach, and
Mooney were at all relevant times employed by the New York
State Department of Corrections and Community Supervision
("DOCCS") or its predecessor the Department of Parole,
which has now merged with DOCCS.

Plaintiff was initially convicted in 2005, when he pled guilty
in Erie County Supreme Court to second degree burglary,
criminal possession of a controlled substance, and resisting
arrest. The victim of the burglary alleged that, during the
commission of the crime, Plaintiff stated he would not leave
her home unless either she or her seven-year-old daughter
had sex with him. Plaintiff was sentenced to a determinate
sentence of five years in custody and an additional five years
of supervised release.

Plaintiff was initially released on parole in August 2009 and
placed under the supervision of Parole Officer Amato, who is
not a party to this suit. Prior to Plaintiff's release from custody,
he was designated as a discretionary sex offender ("DSO"), a
designation given in New York State to those "whose instant
offense is not a sex crime, but whose criminal history includes
a prior sex offense conviction or a crime the commission
of which had a sexual component." (Himmelsbach Dep.
3:11; Docket No. 66.) The designation is not public, it is an
internal classification that defines the conditions to which a
parolee is subject during the period of supervised release. A
DSO is subject to some of the same parole conditions as a
sex offender, which may include sex offender treatment or
prohibitions on interacting with minors, but does not require
the parolee to register with the State Sex Offender Registry.
The designation is made following recommendation by a
parole officer and approval by a supervisor.

 *2  Defendants state that Plaintiff was designated as a DSO
because of the statement that he made during the burglary
that he would not leave the victim's home unless either she or
her seven-year-old daughter had sex with him. It appears that
the designation was recommended by Parole Officer Amato,
though it is not clear which supervisor approved Officer
Amato's recommendation. Officer Amato met with Plaintiff
on August 24, 2009, shortly after his release. At that time,
Plaintiff signed conditions of parole indicating that, among
other conditions of parole, he was required to participate and
complete sex offender counseling. Plaintiff does not recall
signing the conditions of parole, and disputes that Officer
Amato told him that he would be supervised as a DSO. Officer
Amato supervised Plaintiff for only a short time because,
three days after he was released, Plaintiff violated his curfew

Case 9:18-cv-01472-TJM-TWD    Document 45    Filed 11/25/19    Page 24 of 33

Gordon v. Semrug, Not Reported in Fed. Supp. (2017)

and returned to custody after pleading guilty to a parole violation.

Plaintiff was next released from custody on August 26, 2010, and placed under the supervision of Officer Semrau. Officer Semrau "submitted rationales for the special conditions associated with" Plaintiff—which would appear to mean that he supported Plaintiff's continued designation as a DSO. (Semrau Decl. ¶ 19; Docket No. 67-4.) Plaintiff states that he first learned of the sex offender conditions from Officer Semrau, that he objected to the conditions, and that he was told he would "have to register in a kind of way that it would only be provided to local police officers." (Gordon Dep. 20:13-18, Docket No. 67.) Officer Semrau advised Plaintiff that he could initiate an Article 78 proceeding if he wanted to challenge the designation. Despite his objections, Plaintiff signed off on the conditions and did not file any challenge at that time.

Plaintiff was not compliant with the conditions of his parole. Officer Semrau often had difficulty locating the Plaintiff, and he failed to attend the requisite sex offender counseling. On November 12, 2010, after DOCCS officers were unable to locate Plaintiff for several weeks, an absconder warrant was issued. Plaintiff alleges that, on February 3, 2011, after he had absconded to Nebraska, he saw a television broadcast on "Channel 4" that said he "was wanted by the New York Department of Parole, that [he] was a sex offender wanted by ... the State Department of Parole, someone who committed a sex offense...." (Gordon Dep. 62:20-23, 63:1-7, Docket No. 67.) Plaintiff does not know the source of the information provided to Channel 4. On December 13, 2011, Plaintiff was taken into custody in Nebraska after a traffic stop and extradited back to New York shortly after. Plaintiff alleges that the extradition paperwork stated that his crime of conviction was rape, though the paperwork contradicts this. After Plaintiff was brought back to Buffalo, he was either found guilty or pled guilty to violating his parole and sentenced to fifteen months in custody.

Plaintiff was released on parole for the third and final time on June 6, 2013, under the supervision of Officer Himmelsbach. Prior to Plaintiff's release, Senior Parole Officer Susanna Mattingly recommended that Plaintiff be classified as a DSO, which was approved by the Bureau Chief. Officer Himmelsbach informed Plaintiff that he would be supervised as a DSO and also of several additional conditions, including a requirement that he avoid contact with Allison Coleman, a woman with whom Plaintiff had a prior relationship and a

history of domestic violence. Officer Himmelsbach imposed a curfew of 8pm to 8am, a ban on driving, and a prohibition on going to bars. She also used a GPS to monitor Plaintiff's movements due to his history of violence and the previous absconding incident. Plaintiff again protested the terms of his parole, but again signed off on them.

Plaintiff was no more compliant on his third attempt at parole than he had been during the two prior periods of release. On July 25, 2013, Officer Himmelsbach found Plaintiff speaking with Ms. Coleman in front of her home. Officer Himmelsbach also found an unapproved cell phone in Plaintiff's possession that revealed Plaintiff had been associating with children and visiting pornographic web sites in violation of the DSO-related conditions of his parole. Plaintiff was taken back into custody and charged with seventeen parole violations, including violating curfew on multiple occasions, being within 1000 feet of Ms. Coleman, being within 1000 feet of a minor, possession of an unapproved cell phone, and accessing pornographic sites on his cell phone.

 **\*3** Officer Mooney acted as the Parole Revocation Specialist who prosecuted Plaintiff for these violations at the Parole Revocation Hearing on October 2, 2013. Ms. Coleman testified at the hearing that she had known Plaintiff for many years, that he was at her residence, and that she knew he was not supposed to be at her residence. Officer Himmelsbach also testified at the hearing as to the conditions of Plaintiff's parole. Plaintiff was sentenced to "maxing out" his parole, meaning that he was sentenced to complete the remainder of his supervised release in custody.

Plaintiff commenced this § 1983 action in April 2014, while still in custody on the parole violations. Shortly after, on July 25, 2014, Plaintiff brought a *habeas corpus* proceeding in New York state court. See Matter of Gordon v. LaClair, 48 Misc. 3d 926, 16 N.Y.S.3d 371 (N.Y. Sup. Ct. 2015). The Franklin County Supreme Court acknowledged the possibility that the DSO designation may have implicated Plaintiff's liberty interest, but dismissed Plaintiff's petition because it appeared that Plaintiff's parole was revoked primarily based on violations of parole that were unrelated to the DSO-specific conditions:

> The mere fact that [Plaintiff] may have been unlawfully designated a "discretionary sex offender" for parole supervision purposes does not, in

Case 9:18-cv-01472-TJM-TWD    Document 45    Filed 11/25/19    Page 25 of 33

Gordon v. Semrug, Not Reported in Fed. Supp. (2017)

and of itself or even when coupled with a parole condition directing his participation in an intrusive sex offender treatment program, mandate the judicial reversal of a subsequent final parole revocation determination in the absence of allegations/findings that the parole revocation determination was based solely upon the violation of the release condition requiring petitioner to participate in the sex offender treatment program.

Id. at 936.

Plaintiff was released in July 2015, having completed his term of parole. It is undisputed that, since his term is now complete, he is no longer designated as a DSO and is no longer subject to any condition of parole. It is also undisputed that Plaintiff was not made to register as a sex offender, and that he never attended sex offender counseling.

## III. DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the role of this Court "not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A fact is material where it "might affect the outcome of the suit under the governing law...." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 2d 202 (1986). A dispute regarding a material fact is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[I]n reviewing all of the evidence to determine whether judgment as a matter of law is appropriate, 'the court must draw all reasonable inferences in favor of the nonmoving party.' " Kaytor, 609 F.3d at 545 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L.Ed. 2d 105 (2000)) (emphasis removed). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci,

923 F.2d 979, 982 (2d Cir. 1991). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995). "[S]ummary judgment is proper only when, ... 'there can be but one reasonable conclusion as to the verdict.' " Kaytor, 609 F.3d at 545 (quoting Anderson, 477 U.S. at 250).

**\*4** Further, this Court will "liberally construe pleadings and briefs submitted by *pro se* litigants, ... reading such submissions 'to raise the strongest arguments they suggest.' " Bertin v. United States, 478 F.3d 489, 492 (2d Cir. 2007) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)) (internal citations omitted). "Nonetheless, '[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment.' " Rodriguez v. Ames, 224 F. Supp. 2d 555, 558-59 (W.D.N.Y. 2002) (quoting Rodriguez v. Hahn, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002)).

Plaintiff claims that his designation as a DSO was a violation of his Constitutional rights, contending that he has never been convicted of a sex crime and therefore should have received a hearing before the designation was imposed. He expressly limits his challenge to the designation itself, and not the conditions that accompanied it, stating:

> [T]his Complaint is not about the Department of Parole's authority or discretion to implement any parole supervised conditions. This Complaint ... is specifically a challenge to what the Plaintiff truly believes to be an unconstitutional sex offender classification/ designation and notification of himself under the supervision of the Department of Parole.

(Complaint at p. 6; Docket No. 1.) Plaintiff characterizes his claims as Malicious Prosecution, Harassment, Illegal Search and Seizure, Equal Protection and Due Process, and brings suit under 42 U.S.C. § 1983 seeking monetary damages and

Case 9:18-cv-01472-TJM-TWD   Document 45   Filed 11/25/19   Page 26 of 33

Gordon v. Semrug, Not Reported in Fed. Supp. (2017)

injunctive relief. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. County of Fulton, 126 F.3d 400, 405 (2d. Cir. 1997) (citing Eagleston v. Guido, 41 F.3d 865, 875-76 (2d Cir. 1994)).

## A. Statute of Limitations

The statute of limitations for Section 1983 actions arising out of constitutional wrongs in New York is three years. Eagleston, 41 F.3d at 871. In calculating this period, courts assume, pursuant to the "prison mailbox" rule, that a pleading is filed when it is given to prison officials. Houston v. Lack, 487 U.S. 266, 276, 108 S. Ct. 2379, 2385, 101 L.Ed. 2d 245 (1988); Nobel v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001). In this case, Plaintiff's Complaint was notarized April 25, 2014, which will be considered the date it was given to prison officials. Accordingly, any claims that accrued before April 25, 2011 are time barred.

The Second Circuit has ruled that accrual of a Section 1983 claim occurs when the plaintiff "knows or has reason to know of the injury which is the basis of his action." See Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980) cert. denied, 450 U.S. 920, 101 S. Ct. 1368, 67 L.Ed. 2d 347 (1981) (internal quotation omitted); see also Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) ("A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm." (internal quotation omitted)). To the extent that Plaintiff seeks to argue that the "continuing violation" doctrine has tolled the statute of limitations, this Court finds that argument to be without merit.

Based on the facts presented by the parties, it appears that Plaintiff was designated as a DSO on three occasions, immediately prior to his release on parole in August 2009, August 2010, and June 2013. Plaintiff argues that he was not told of the DSO designation during his first parole in August 2009, and has not brought suit against Officer Amato, who made the recommendation for the initial designation, nor the unnamed supervisor who ultimately approve the initial designation. Plaintiff alleges that he became aware of the DSO designation in August 2010, when Officer Semrau took over his supervision. Plaintiff has stated that he seeks only to challenge the designation itself, and not the conditions associated with the designation.

**\*5** The chief purpose of the continuing violation doctrine "is to protect the rights of plaintiffs where 'the earlier discrimination may only be recognized as actionable in the light of events that occurred later.' " Keddy v. Smith Barney, Inc., No. 96 Civ. 2177(DAB)(SEG), 2000 WL 193625, at \*3 (S.D.N.Y Feb. 16, 2000) (quoting Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999), cert. denied, 528 U.S. 874, 120 S. Ct. 178, 145 L.Ed. 2d 150 (1999)). This rationale does not apply to the case at hand. Unlike the employment discrimination context, where this doctrine is often applied, Plaintiff here does not allege a series of individual acts that, when taken together, amount to a violation of constitutional rights. Instead, he cites the individual occurrences where he was designated as a DSO, each of which is akin to a "one time act with continued consequences," and which the Eleventh Circuit has held is not subject to the continuing violation doctrine. See Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) ("The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." (internal quotation and punctuation omitted)); see also Munsch v. Evans, No. 11-CV-2271 JFB ETB, 2012 WL 528135, at \*12-14 (E.D.N.Y. Feb. 17, 2012) ("the decision to impose conditions to plaintiff's lifetime supervision was a 'one time act with continued consequences' " therefore continuing violation doctrine did not apply) (quoting Lovett, 327 F.3d at 1183).

Because the continuing violation doctrine is inapplicable, there is no tolling of the statute of limitations. Accordingly, Plaintiff's claims that accrued before April 25, 2011, including his claim against Officer Semrau, must be dismissed as time-barred. [4]

## B. Monetary Damages

Defendants argue that the designation in this case was not a violation of due process because the DSO designation is private and therefore not the equivalent of a Sex Offender designation, which requires registration. Defendants further argue that, even if it were a violation, they would be shielded from suit by qualified immunity. "Qualified immunity protects public officials from liability for civil damages 'unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.' " Singleton v. Doe, 210 F. Supp. 3d 359, 371 (E.D.N.Y. 2016) (quoting Taylor v. Barkes, 135 S. Ct. 2042,

2044, 192 L.Ed. 78 (2015)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' " Mullenix v. Luna, 136 S. Ct. 305, 308, 193 L.Ed. 2d 255 (2015) (per curiam) (quoting Reichele v. Howards, 566 U.S. 658, 659, 132 S. Ct. 2088, 182 L.Ed. 985 (2012)). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.' " Reichele, 566 U.S. at 664 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L.Ed. 2d 1149 (2011)). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004).

As recently noted by the Eastern District: "The Court is unaware of any Second Circuit federal court determination that addresses a parolee's liberty interest in being free from a discretionary sex offender designation." See Singleton, 210 F. Supp. 3d at 371 (finding qualified immunity applied in parolee's § 1983 suit arising from DSO designation). The Second Circuit has held, in other contexts, that "damage to one's reputation is not 'by itself sufficient to invoke the procedural protection of the Due Process Clause;' " " 'stigma plus' is required to establish a constitutional deprivation." Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994) (quoting Paul v. Davis, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L.Ed. 2d 405 (1976)).

*6 To establish a "stigma plus" claim, a plaintiff must show (1) "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."

Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010) (quoting Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004)).

Such a "stigma plus" claim may arise where parolees are forced to comply with certain registry and notification requirements of New York's Sex Offender Registration Act. See, e.g., Doe v. Pataki, 3 F. Supp. 2d 456, 463 (S.D.N.Y. 1998); People v. David W., 95 N.Y.2d 130, 139, 711 N.Y.S.2d 134, 733 N.E.2d 206 (N.Y. 2000). But although a prisoner or parolee may have a liberty interest in avoiding the stigma and tangible impairment associated with a registered sex offender designation, neither the Second Circuit nor the Supreme Court has made clear that the interest extends to a DSO designation. "Thus, Plaintiff's right to receive due process

prior to being designated a discretionary sex offender is not clearly established, and to the extent that Plaintiff had such an interest upon which Defendants wrongly infringed, Plaintiff cannot recover money damages from Defendants because they are entitled to qualified immunity." Singleton, 210 F. Supp. 3d at 371 (citing Taylor, 135 S. Ct. at 2044; Allen v. Coughlin, 64 F.3d 77, 81 (2d Cir. 1995)).

## C. Injunctive Relief

Plaintiff also seeks injunctive relief, in the form of a "name clearing." The subject matter jurisdiction of this Court is limited "to disputes involving 'live cases and controversies.' " U.S. Const. art. III; County of Suffolk v. Sebelius, 605 F.3d 135, 140 (2d Cir. 2010). "Mootness ... concerns when and whether a case is live." County of Suffolk, 605 F.3d at 140 (internal quotations omitted). The general rule is that "courts' subject matter jurisdiction ceases when 'an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party.' " Id. (quoting United States v. Quattrone, 402 F.3d 304, 308 (2d Cir. 2005)).

In the present case, Plaintiff's request for injunctive relief is moot. It is undisputed that Plaintiff is no longer on parole, and is therefore no longer subject to the conditions accompanying the DSO designation. Making every inference in Plaintiff's favor, he has failed to raise an issue of material fact as to whether he continues to suffer an injury arising from the DSO designation, which the credible evidence shows to have been a status associated solely with the conditions of his parole. Therefore, injunctive relief is not available. [5] Having found the injunctive claims moot, this Court also finds Plaintiff's motion for a name clearing hearing to be moot. [6]

## IV. CONCLUSION

*7 Because Plaintiff's claims for compensatory damages are barred by Defendants' qualified immunity and his claims for injunctive relief are moot, Defendants' Motion for Summary Judgment is granted and the claims against them are dismissed. Plaintiff's motions are denied.

## V. ORDER

IT HEREBY IS ORDERED, that Plaintiff's Motion for Summary Judgment (Docket No. 62) is DENIED;

Gordon v. Semrug, Not Reported in Fed. Supp. (2017)

Case 9:18-cv-01472-TJM-TWD    Document 45    Filed 11/25/19    Page 28 of 33

FURTHER, that Defendants' Motion for Summary Judgment (Docket No. 66) is GRANTED;

FURTHER, that Plaintiff's Motion for a Hearing (Docket No. 61) is DENIED;

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2241966

Footnotes

1    The caption and complaint in this action appear to misspell Defendant Semrau's name as "Semrug" and Himmelsbach's name as "Himmelsboch".

2    Plaintiff's Complaint initially included claims against the New York Department of Parole, Andrea A. Evans, and Channel Four News. (Docket No. 1). These defendants were dismissed with prejudice on October 24, 2014 (Docket No. 11).

3    The facts are derived principally from the parties' Local Rule 56 Statements, the parties' declarations, and exhibits attached thereto. Only the facts necessary to the resolution of the motion are recounted below and are undisputed unless otherwise stated.

4    Plaintiff also alleges that, while he had absconded from parole to Nebraska on February 3, 2011, he saw a television broadcast on "Channel 4" stating he was a sex offender wanted by the State Department of Parole. Any claim accruing from the alleged broadcast is time-barred. Further, any claims arising from the broadcast or from Plaintiff's allegations that his extradition papers said he was convicted of "rape" must also be dismissed because Plaintiff states that he does not know the source of the information in these alleged incidents, and the Defendants state that they were not the source. See Rodriguez, 224 F. Supp. 2d at 558 ("a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment").

5    This Court further notes that Plaintiff has not shown that he was denied due process of law. "[T]he availability of adequate process defeats a stigma-plus claim." Hughes v. City of N.Y., 197 F. Supp. 3d 467, 477-78 (E.D.N.Y. 2016) (denying "stigma plus" claim where plaintiff failed to pursue an Article 78 proceeding), aff'd in relevant part, No. 16-2557, 2017 WL 685803 (2d Cir. Feb. 21, 2017) (quoting Segal v. City of N.Y., 459 F.3d 207, 213 (2d Cir. 2006)). Plaintiff did not pursue an Article 78 proceeding, which the Second Circuit has repeatedly held "provides the requisite post-deprivation process." Anemone v. Metro. Transp. Auth., 629 F.3d 97, 121 (2d Cir. 2011). An Article 78 proceeding must be commenced "within four months after the determination to be reviewed becomes final and binding...." N.Y. C.P.L.R. 217(1). Plaintiff failed to challenge his designation as a DSO by Article 78, instead filing a *habeas corpus* petition on July 25, 2014, more than a year after his third and final designation as a DSO. In denying the petition, the court noted that, if the designation was "a violation of his constitutional due process rights, the proper remedy (preparole violation) would be a court order striking the offending parole condition." Matter of Gordon, 48 Misc. 3d at 933. Accordingly, because Plaintiff failed to avail himself of the process available, he was not denied due process.

6    Further, this Court finds no basis for Plaintiff's claims under the Fourth, Fifth, and Sixth Amendments. See Barnett v. Carberry, 420 Fed.Appx. 67, 69 (2d Cir. 2011) ("The Fourth Amendment safeguards privacy and personal security only against searches or seizures, and not conduct outside of a governmental investigation of a violation of criminal law or other statutory or regulatory law."); Dutkiewicz v. Hyjek, 135 Fed.Appx. 482, 484 (2d Cir. 2005) ("the Sixth Amendment ... applies only to criminal defendants"); Cassidy v. Scoppetta, 365 F. Supp. 2d 283, 286 (E.D.N.Y. 2005) ("The Fifth Amendment governs the conduct of the federal government and federal employees, and does not regulate the activities of state officials or state actors." (internal quotation and punctuation omitted)).

End of Document                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 3851831
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Kenneth WARD, Plaintiff,

v.

Lucien LeCLAIRE, et al., Defendant.

No. 07-CV-6145CJS.
|
Aug. 14, 2008.

**Attorneys and Law Firms**

Kenneth Ward, Rochester, NY, pro se.

Gary M. Levine, New York State Office of the Attorney General, Rochester, NY, for Defendant.

DECISION and ORDER

CHARLES J. SIRAGUSA, District Judge.

### INTRODUCTION

**\*1** Before the Court is Plaintiff's motion (Docket No. 23) to amend his complaint and Defendants' cross-motion (Docket No. 24) to dismiss portions of the proposed amended complaint. For the reasons stated below, Plaintiff's application and Defendants' applications are both granted in part, and denied in part.

### STANDARDS OF LAW

**Motion to Amend**

The Federal Rules of Civil Procedure provide that leave to file an amended complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, leave to amend may be denied in the face of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment...." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also United States v. Continental Illinois Nat. Bank And Trust Co.,* 889 F.2d 1248, 1254 (2d Cir.1989).

**Motion to Dismiss**

Recently, the U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly,* ---U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (May 21, 2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotations omitted). *See also, ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (quoting *Bell Atl. Corp. v. Twombly* ) (footnote omitted); *Iqbal v. Hasty,* 490 F.3d 143 (2d Cir.2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.) When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers,* 192 F.3d 52, 56 (1999), *cert. denied,* 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000). On the other hand, "[c]onclusory allegations of the legal status

of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995) (*citing In re American Express Co. Shareholder Litig.,* 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)).

**\*2** Because plaintiff appears pro se, the complaint must be liberally construed in his favor, and held to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); see also *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993). The Court interprets complaints submitted by pro se plaintiffs to raise the strongest arguments that they suggest. *Burgin v. GMC,* No. 04-CV-503S, 2006 WL 469355, at \*3, 2006 U.S. Dist. LEXIS 16915, at \*10 (W.D.N.Y. Feb.24, 2006) (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

## ANALYSIS

### Official Capacity Claims

With respect to Plaintiff's proposed amended complaint (Docket No. 22) ("amended complaint") Defendants first move to dismiss the claims against them in their official capacities. Previously, by a Memorandum and Order entered on June 29, 2007 (Docket No. 6), the Honorable John T. Elfvin of this Court, dismissed the official capacity claims on the basis of the Eleventh Amendment. As Judge Elfvin explained, the Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such suit or an express statutory waiver of immunity. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98-100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Plaintiff has not provided any information that would cause the Court to reconsider Judge Elfvin's prior decision. *See Virgin Atlantic Airways, Ltd. v. National Mediation Bd.,* 956 F.2d 1245, ("The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790."). Accordingly, Defendants' motion to dismiss all the official capacity claims is granted.

### Claim Against Department of Correctional Services ("DOCS")

Defendants move to dismiss the claims in the amended complaint made against DOCS. The Court has reviewed the section of Plaintiff's amended complaint entitled "Parties," and does not find any mention of DOCS as a defendant. Therefore, this portion of Defendants' application is denied as moot. In any event, any claims against DOCS would also be barred by Judge Elfvin's prior ruling pursuant to the Eleventh Amendment. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

### Dismissal of Individual Claims Against Three Defendants

Defendants represent that Plaintiff's amended complaint "seeks to drop from the lawsuit Gowanda Superintendent Richard Savage, Deputy Superintendent of Programs Jose Melendez and Corrections Officer Marcia Hessel." (Def.s' Mem. of Law, Docket No. 25, at 4.) The Court concurs that Plaintiff expressed his intent to remove those three from the lawsuit, *see* Pl.'s Mem. of Law, Docket No. 23, ¶ 10(i), and grants the application to remove them from the case.

### Personal Involvement By Defendants Goord, LeClaire, Annucci and Eagen

**\*3** Defendants next argue that the amended complaint does not sufficiently plead personal involvement by Defendants Goord, LeClaire, Annucci and Eagen. The Court agrees.

A prerequisite for liability under a § 1983 claim is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998).

> A defendant may be "personally involved" in causing a constitutional deprivation if: (1) defendant participated directly in the alleged infraction; or (2) acting in a supervisory capacity, defendant (a) failed to remedy a continuing or egregious wrong after learning of a violation, (b) created a policy or custom under which the unconstitutional practices occurred or allowed such policy or custom to continue, or (c) was "grossly negligent" in managing subordinates

who actually caused the constitutional deprivation.

*Candelaria v. Coughlin,* 787 F.Supp. 368, 372 (S.D.N.Y.1992) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

The amended complaint contains the following language:

> Defendant Goord establish[ed] a smoke-free committee to develop a plan to eliminate all indoor smoking. This committee consis[t]ing of Defendants LeClaire Jr.[;] Eagen; and Annucci among others[.] [T]hey [k]new about the New York State Legislature's [1989] enactment of the Clean Indoor Air Act ("CIAA"), codified at *N.Y. Pub. Health Law* § L 399-n et seq.

(Am. Compl. ¶ 7; *see also* ¶ 5.) Defendants contend that "[s]uch conduct is not sufficient basis to support any claim of wrong doing as plaintiff is not alleging that the defendants created an unconstitutional deprivation." (Def.s' Mem. of Law, Docket No. 25, at 5-6.) The Court agrees. Although Plaintiff further alleges that he sent Defendant Goord letters about lack of enforcement of the smoke-free policy (Am.Compl.¶ 17) and that Defendants Eagen and LeClaire did not respond to his many written complaints (Am.Compl.¶ 32), the Court finds that such allegations, accepted as true, do not constitute personal involvement for purposes of § 1983 liability. "Generally, the allegation that a supervisory official ignored a prisoner's letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the official so as to create liability under § 1983." *Gayle v. Lucas,* No. 97 Civ. 0883(MGC), 1998 WL 148416, at *4, 1998 U.S. Dist. LEXIS 3319 (S.D.N.Y.1998); *cf. Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (plaintiff's allegation that the superintendent of a correctional facility did not respond to his letter of his complaint did not raise a trieble issue of fact where the contents of the letter were not specified); *Davis v. City of New York,* No. 00 Civ. 4309(SAS), 2000 WL 1877045, *9, 2000 U.S. Dist. LEXIS 18520 (S.D.N.Y. Dec.27, 2000)* (finding no personal involvement where supervisory official ignored letter of protest and

had no other involvement in the alleged constitutional deprivation); *Richardson v. Coughlin,* 101 F.Supp.2d 127, 132-133 (W.D.N.Y.2000) (granting summary judgment to supervisory official on ground that no personal involvement in constitutional violation shown where defendant merely ignored prisoner's letter of complaint); *Pritchett v. Artuz,* No. 99 Civ. 3957(SAS), 2000 WL 4157, at *6, 1999 U.S. Dist. LEXIS 20041 (S.D.N.Y. Jan.3, 2000) (finding no personal involvement and thus no § 1983 liability where supervisory official ignored prisoner's letter of complaint); *Thomas v. Coombe,* No. 95 Civ. 10342(HB), 1998 WL 391143, at *6, 1998 U.S. Dist. LEXIS 10519, *17 (S.D.N.Y. Jul.13, 1998)* ("the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement"); *Higgins v. Artuz,* No. 94 Civ. 4810(SS), 1997 WL 466505, *7, 1997 U.S. Dist. LEXIS 12034, *17-18 (S.D.N.Y. Aug.12, 1997)* (same) (collecting cases); *Kopec v. Coughlin,* 767 F.Supp. 463, 466 (S.D.N.Y.1990), *vacated on other grounds,* 922 F.2d 152 (2d Cir.1991) (holding that failure to respond to plaintiff's letter requesting help does not in itself evince deliberate indifference to plaintiff's medical needs); *Garrido v. Coughlin,* 716 F.Supp. 98, 100 (S.D.N.Y.1989) (complaint against DOCS Commissioner dismissed where his only alleged connection to the case was that "he ignored [plaintiff's] letter of protest and request for an investigation of the allegations in [the] action").

**\*4** Plaintiff alleges that Defendant Annucci "responded to Plaintiff['s] numerous written complaints to Defendants Goord, and LeClaire with a blanket repetitive response that the efficacy of the policy is currently under overall evaluation[,] which makes no sense ." (Am.Compl.¶ 32.) Notwithstanding that Plaintiff found Defendant Annucci's response nonsensical, the Court determines that it does not rise to the level of a constitutional deprivation. A claim which fails to demonstrate a defendant's personal involvement in the alleged constitutional deprivation is subject to *sua sponte* dismissal. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *see Neitzke v. Williams,* 490 U.S. 319, 323 n. 2, 109 S.Ct. 1827, 1830 n. 2, 104 L.Ed.2d 338 (1989). Moreover, Plaintiff's retaliation claims against Defendants Goord, LeClaire, Annucci and Eagen are unsupported by specific factual allegations. Therefore, the Court grants Defendants' application to dismiss all Plaintiff's claim against Defendants Goord, LeClaire, Annucci and Eagen.

### Conspiracy Claim

In the amended complaint, Plaintiff alleges the following:

All the unnumber[ed] grievances in paragraph (23) were never filed, logged or responded to by Defendant Janish in violation of directive (4040) procedures as well as Plaintiff['s] constitutional right to redress complaints. The Defendants conspire[d] with one another to cover-up all the smoking, harassment, and retaliation violations by depriving Plaintiff of his constitutional rights then locking him up in the box to keep him quiet and punish him for speaking out about the smoking probl[e]ms at GCF.

(Am.Compl.¶ 24.) "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss," *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) (*per curiam* ), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983); *see also Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993) (" 'where a plaintiff fails to produce any specific facts whatsoever to support a conspiracy allegation, a district court may, in its discretion, refuse to permit discovery and grant summary judgment' ") (quoting *Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97, 107 (2d Cir.1981)). Here, plaintiff has alleged no specific facts in support of his contention that the defendants conspired against him, but he instead simply claims in a vague, conclusory, and unsupported manner that the defendants engaged in a conspiracy against him. Given that, the Court finds that Plaintiff's allegations of conspiracy are without foundation and dismisses his conspiracy claim with prejudice.

### Pendent State Law Claims

In the amended complaint, Plaintiff makes pendent State law claims as follows:

State Pendant Law: New York State Constitution Art. 1, § 6; Art. § 11; Art. 1 § 12; New York State Civil Rights Law §§ 40-c; New York State Correction Law §§ 138 and 139; New York State Codes, Rules, and Regulations [NYCRR] Title 9 § 7695; 7602.1; 7602.8; and 7602.9; New York State Department Of Correctional Services Directive 2612;

2614; and 4040;, New York State Human Right Law, New York State Clear Air Act, New York State Public Health Law § 1399-n....

**\*5** State Pendant Law: New York State Constitution Art. 1, § 6; Art. § 11; Art. 1 § 12; New York State Civil Rights Law §§ 40-c; New York State Correction Law §§ 138 and 139; New York State Codes, Rules, and Regulations [NYCRR] Title 9 § 7695; 7602.1; 7602.8 and 7602.9; New York State Department of Correctional Services Directives 2612; 2614; and 4040;, New York State Human Rights Law, New York State Clear Air Act;, New York State Public Health Law § 1399-n.

(Am.Compl.¶¶ 48(a) & 52(a).) To the extent that these portions of the amended complaint attempt to bring state law claims against Defendants, they are barred. As Judge Larimer observed in *Heyliger v. Gebler,* 496 F.Supp.2d 250 (W.D.N.Y.2007):

"It is well settled that Section 24 [1] shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." *Ierardi v. Sisco,* 119 F.3d 183, 186 (2d Cir.1997) (citing *Baker v. Coughlin,* 77 F.3d 12, 14-15 (2d Cir.1996)) (other citations omitted). "Such immunity is available whether the action is pursued in a state court or, under pendent jurisdiction, in a federal court." *Id.; Baker,* 77 F.3d at 15; *Donahue v. Bennett,* No. 02-CV-6430, 2003 U.S. Dist. LEXIS 12601, 2003 WL 21730698, at \*4 (W.D.N.Y. June 23, 2003).

*Heyliger,* 496 F.Supp.2d at 252-53. Accordingly, the state law claims are dismissed.

### Non-Constitutional Federal Claims

In his amended complaint, Plaintiff alleges causes of action under 18 U.S.C. §§ 241, 242, 1503 and 1505. (Am.Compl.¶¶ 48(b) & 52(b).) As the Second Circuit Observed in *Hill v. DiDio,* 191 Fed. Appx. 13 (2d Cir.2006):

A private individual may bring suit under a federal statute only when Congress specifically intended to create a private right of action. *See, e.g., Gonzaga Univ. v. Doe,* 536 U.S. 273, 283, 122 S.Ct. 2268, 153

L.Ed.2d 309 (2002); *Alaji Salahuddin v. Alaji,* 232 F.3d 305, 308, 311-12 (2d Cir.2000). We have noted in the past that there is no private right of action under section 242, *see Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994)....

*Hill v. DiDio,* 191 Fed. Appx. at 14 (2d Cir.2006). Plaintiff has not alleged that any of the criminal statutes to which he cites allows for a private cause of action. As the Second Circuit noted in *Leist v. Simplot,* 638 F.2d 283 (2d Cir.1980):

The Supreme Court "has been especially reluctant to imply causes of action under statutes that create duties on the part of persons for the benefit of the public at large," *Cannon, supra,* 441 U.S. at 692 n. 13, 99 S.Ct. at 1955 n. 13; *Cort v. Ash,* supra, 422 U.S. at 79-80, 95 S.Ct. at 2088-89 (18 U.S.C. § 610, prohibiting corporate contributions), and it has rarely implied a cause of action under a criminal statute. *Chrysler Corp. v. Brown, supra,* 441 U.S. at 316, 99 S.Ct. at 1725.

**\*6** *Leist,* 638 F.2d at 333. Accordingly, the non-constitutional Federal claims in paragraphs 48(b) and 52(b) of the amended complaint must be dismissed.

### CONCLUSION

For the foregoing reasons, it is hereby

ORDERED, that Defendant's cross-motion (Docket No. 24) to dismiss is granted in part, as detailed below; and it is further

ORDERED, that Plaintiff's claims against Defendants in their official capacities are dismissed; and it is further

ORDERED, that Defendants' application to dismiss DOCS is denied as moot; and it is further

ORDERED, that claims against defendants Gowanda Superintendent Richard Savage, Deputy Superintendent of Programs Jose Melendez and Corrections Officer Marcia Hessel, are dismissed and the Clerk is directed to enter judgment in their favor; and it is further

ORDERED, that Defendants' motion to dismiss all Plaintiff's claims against Defendants Goord, LeClaire, Annucci and Eagen is granted; and it is further

ORDERED, that Plaintiff's conspiracy claim (Am.Compl.¶ 24) is dismissed with prejudice; and it is further

ORDERED, that Plaintiff's pendent state law claims (Am.Compl.¶¶ 48(a) & 52(a)) are dismissed; and it is further

ORDERED, except for the claims specifically dismissed above, Plaintiff's motion to amend (Docket No. 23) is granted.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 3851831

### Footnotes

1   N.Y. Corrections Law § 24(1) (1978): "No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee."

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.