UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

TIMOTHY E. LANDO, JR.

        Plaintiff,     AMENDED COMPLAINT

     v.          Case No. 9:18-cv-1472

ANTHONY J. ANNUCCI, STEVEN A. CLAUDIO,
KENNETH GILBERT, MARGARET MONTFORT-
BALFOUR, JAY MOSS, KENNETH PALMER,
TAMMY GRONAU, BRIAN REED, and JASON
RHODES,

        Defendants.

PLAINTIFF DEMANDS A TRIAL BY JURY

  Plaintiff in the above-captioned action, alleges as follows:

Plaintiff brings damage claims under §1983 for violation of three

Constitutional Rights (1) familial association under the First Amendment, and

(2) substantive and (3) procedural due process under the Fourteenth Amendment.

## JURISDICTION

1. This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. §1983. The Court has jurisdiction over this action pursuant to 28 U.S.C.A. §§1331, 1343.

2.   **PLAINTIFF(S) INFORMATION:**

Timothy E. Lando, Jr. Din# 06A5781

Marcy Correctional Facility

Box 3600

Marcy, N.Y. 13403-3600

**DEFENDANT(S) INFORMATION:**

Defendant No. 1: Anthony J. Annucci, Acting Commissioner of DOCCS

The Harriman State Campus

1220 Washington Ave. Bldg. 9

Albany, N.Y. 12226-2050

Defendant No. 2: Steven A. Claudio, Deputy Commissioner of DOCCS

The Harriman State Campus

1220 Washington Ave. Bldg. 9

Albany, N.Y. 12226-2050

(2)

Defendant No. 3: Kenneth Gilbert, Regional Director of DOCCS

845 Central Avenue

Albany, N.Y. 12206

Defendant No. 4: Margaret Montfort-Balfour, Bureau Chief-Syracuse Belt

Syracuse Belt/Metro Area Office

333 East Washington St.

Syracuse, N.Y. 13202

Defendant No. 5: Jay Moss, Senior Parole Officer

Syracuse Belt/Metro Area Office

333 East Washington St.

Syracuse, N.Y. 13202

Defendant No. 6: Kenneth Palmer, Senior Parole Officer

Syracuse Belt/Metro Area Office

333 East Washington St.

Syracuse, N.Y. 13202

Defendant No. 7: Tammy Gronau, Parole Officer

Syracuse Belt/Metro Area Office

333 East Washington St.

Syracuse, N.Y. 13202

Defendant No. 8: Brian Reed, Parole Officer

Syracuse Belt/Metro Area Office

333 East Washington St.

Syracuse, N.Y. 13202

(3)

Defendant No. 9: Jason Rhodes, Parole Officer

Syracuse Belt/Metro Area Office

333 East Washington St.

Syracuse, N.Y. 13202

### PRELIMINARY STATEMENT

3. This is an action filed pro se by the Plaintiff pursuant to 42 U.S.C.A. §1983. Defendant(s) of the New York State Department of Correction and Community Supervision, a duly organized and existing department of New York, has engaged in arbitrary and capricious practices related to plaintiff's parental rights. Defendant(s) barred contact between plaintiff and plaintiff's Children, despite a standing custody and visitation order, to inflict additional punishment for the nature of plaintiff's criminal offense, and for plaintiff's challenging of parole's authority to defy the Oswego County Family Court Order (please see page 30-31 ). In addition, defendant(s) barred plaintiff's contact with other Family members, including plaintiff's fiancee, isolating the plaintiff with GPS monitoring solely for punitive reasons.

4. Each of the defendant(s) was aware of the acts of the other defendant(s) in support of the illegal acts of the plaintiff's constitutional rights and each defendant is culpable of the acts of omission by the other defendant(s) and parties to the actions stated in the complaint.

5. Defendant No. 1, is an was a resident of New York State, and was Acting Commissioner of DOCCS, acting under color of law in that capacity, and all acts complained of were in furtherance of the conspiracy alleged and were

intended to and did constitute acts in barring the plaintiff's interest in
maintaining a relationship with his Children, Family and love ones, which
intended to and did cause plaintiff damages.

6.  Defendant No. 2, is and was a resident of New York State, and was Deputy
Commissioner acting on the behalf of defendant No. 1, acting under color of
law in that capacity, and all acts complained of were in furtherance of the
conspiracy alleged and were intended to and did constitute acts in barring the
plaintiff's interest in maintaining a relationship with his Children, Family
and love ones, which intended and did cause plaintiff damages.

7.  Defendant No. 3, is and was a resident of New York State, and was Regional
Director of DOCCS, acting under color of law in that capacity, and all acts
complained of were in furtherance of the conspiracy alleged and were intended
to and did constitute acts in barring the plaintiff's interest in maintaining
a relationship with his Children, Family and love ones, which intended and did
cause plaintiff damages.

8.  Defendant No. 4, is and was a resident of New York State, and was Bureau
Chief-Syracuse Belt Division of Parole (DOCCS), acting under color of law in
that capacity, and all acts complained of were in furtherance of the
conspiracy alleged and were intended to and did constitute acts in barring the
plaintiff's interest in maintaining a relationship with his Children, Family
and love ones, which intended and did cause plaintiff damages.

9.  Defendant No. 5, is and was a resident of New York State, and was Senior
Parole Officer, acting under color of law in that capacity, and all acts
complained of were in furtherance of the conspiracy alleged and were

(5)

intended to and did constitute acts in barring the plaintiff's interest in maintaining a relationship with his Children, Family and love ones, which intended to and did cause plaintiff damages.

10. Defendant No. 6, is and was a resident of New York State, and was Senior Parole Officer of DOCCS, acting under color of law in that capacity, and all acts complained of were in furtherance of the conspiracy alleged and were intended to and did constitute acts in barring the plaintiff's interest in maintaining a relationship with his Children, Family and love ones, which intended to and did cause plaintiff damages.

11. Defendant No. 7, is and was a resident of New York State, and was a Parole Officer of DOCCS, acting under color of law in that capacity, and all acts complained of were in furtherance of the conspiracy alleged and were intended to and did constitute acts in barring the plaintiff's interest in maintaining a relationship with his Children, Family and love ones, which intended to and did cause plaintiff damages.

12. Defendant No. 8, is and was a resident of New York State, and was a Parole Officer of DOCCS, acting under color of law in that capacity, and all acts complained of were in furtherance of the conspiracy alleged and were intended to and did constitute acts in barring the plaintiff's interest in maintaining a relationship with his Children, Family and love ones, which intended to and did cause plaintiff damages.

13. Defendant No. 9, is and was a resident of New York State, and was a Parole Officer of DOCCS, acting under color of law in that capacity, and all acts complained of were in furtherance of the conspiracy alleged and were

intended to and did constitute acts in barring the plaintiff's interest in maintaining a relationship with his Children, Family and love ones, which intended to and did cause plaintiff damages.

14. Defendant(s) No. 1-9, are referred to in this complaint as New York State Department of Corrections and Community Supervision defendant(s).

15. The true capacities, whether individual, corporate, associate, representative, or otherwise, of defendant(s) named the plaintiff is in belief that they participated in, contributed to, or are responsible for, the circumstances, obligations and damages set forth in this comlaint.

16. At all times mentioned, the defendant(s), inclusive were each an agent or employee of each remaining defendant and were acting within the course and scope of that agency and employment. Further, the acts of each defendant(s) were ratified by the remaining defendant(s).

## STATEMENT OF FACTS

17. Plaintiff re-plead and re-alleges Paragraph 1-16, inclusive, of this complaint, each of which is incorporated by this reference.

18. On or about August 11, 2016, plaintiff was released from incarceration for the second time, due to a parole violation. Defendant No. 7 was at this time his assigned parole officer.

19. On or about August 11, 2016, plaintiff learned that his Father was taken to Crouse Irving Hospital in Syracuse, N.Y. plaintiff contacted defendant No. 7

to notify her plaintiff had a family emergency and requested permission to visit his Father at the Hospital.

20. Defendant No. 7 denied the plaintiff's request stating that the denial was because of his status as a sex offender. Plaintiff asked to get the permission of the Hospital to visit, and defendant No. 7 replied that she would ask the Hospital herself. Soon after defendant No. 7 contacted plaintiff stating that the Hospital would not allow his visit due to the plaintiff's sex offender status. Subsequent request were not treated similarly , indicating that the Hospital has no policy specifically precluding visits by sex offenders.

21. On or about August 16, 2016, during plaintiff's initial report date with defendant No. 7 at the Fulton Police Station located in Fulton, N.Y. plaintiff furnished a true certified copy of a Final Order on Petition for Custody and Visitation on Consent, (please see page _30-31_ ) entered and dated May 12, 2016, by the Oswego County Family Court, decision by Judge James K. Eby.

22. Defendant No. 7 immediately denied the plaintiff any/all contact with his Children. The plaintiff informed defendant No. 7 that he had visitation with his Children prior to his parole violation, and that the Family Court Order gave him the right to continue. Defendant No. 7 stated in sum or in part, that she did not care about any prior visitation or Court Order, and that plaintiff was a dangerous sex offender who is not allowed around children, and that she had the final say in the matter because she was not subjected to any Court or Court Orders.

(8)

23. On or about September 2016, defendant No. 7 contacted plaintiff and threatened him with incarceration if plaintiff's family continued to have contact with plaintiff's children via Facebook. Despite plaintiff's assertion that he was not in control of, nor could dictate the actions of his family, defendant No. 7 insisted that plaintiff must make his family stop communicating with plaintiff's children via Facebook or risk incarceration.

24. On or about September 19, 2016 immediately following the event described in Paragraph 23, defendant No. 7 created and/or modified special condition 13(j) which imposed conditions contrary to the Oswego County Family Court Order for Custody and Visitation on Consent (please see page __32__ ), and demanded that plaintiff complied by signing the document.

25. Also on or about September 19, 2016, defendant No. 7 notified plaintiff that she intended to place him on GPS monitoring once approval was received from her supervisor. When plaintiff asked why texting his whereabouts to defendant No. 7 was no longer adequate and GPS was required, defendant No. 7 replied in sum or in part, that the reason was simply because she can place plaintiff on GPS monitoring, and that he was still required to text defendant No. 7 his whereabouts.

26. During this course of time, plaintiff reported to one of his weekly offenders' group therapy sessions mandated by Parole. Plaintiff's therapist Alice Nowark had mentioned in sum or in part, that according to plaintiff's treatment plan created by Parole and agreed upon with Ms. Nowark plaintiff

should be allowed at the very least supervised visitation with his Children and contact with other family members under the age of 18.

27.  On or about October 7, 2016, defendant No. 7 arrived at plaintiff's place of employment in Auburn, N.Y. to issue a GPS monitoring device and to have plaintiff sign special condition 13z1-z10.  Plaintiff asked defendant No. 7 if they could arrange to meet after work for him to comply in order to prevent disruption of the job site, and defendant No. 7 replied that plaintiff must immediately comply or risk incarceration, and plaintiff complied with all of defendant No. 7 directions.

28.  On or about October 2016, defendant No. 7 along with parole officer Jeff Colella, visited plaintiff's residence located at 169 North 5th Street, Fulton, N.Y. 13069 due to a false positive drug analysis.  Defendant No. 7 threw all of plaintiffs' clothes on the floor as she called plaintiff "... a lying drug addict..." and "... a piece of shit pedophile..." then deliberately walked on the clothing.  When plaintiff's Mother challenged defendant No. 7 about the derogatory remarks and walking on plaintiff's clothing, defendant No. 7 yelled back, "... shut the fuck up or get out of the house..." plaintiff's Mother went outside immediately thereafter. Plaintiff was administered a drug test by parole officer Jeff Colella which yielded a negative test result for any drug usage.  Shortly thereafter, defendant No. 7 ordered plaintiff to attend COCO a chemical dependency program, then exited plaintiff's residence.

29.  On or about November, 2016 during a visit of plaintiff's residence (same address as in Paragraph 28) defendant No. 7 asked plaintiff, "do you know

what is worse than a murderer?" When the plaintiff indicated he did not know, defendant No. 7 said, "You, because you're a pedophile." Defendant No. 7 continued with a series of derogatory comments about plaintiff, including, but not limited to, "You're the scum of the Earth, and you belong underneath my shoe," "[you're a] fucking monster," and "[you're a] liar because nobody believes a pedophile."

30. On or about November, 2016, plaintiff reported to parole at the Fulton Police Station, Fulton, N.Y. and asked defendant No. 7 permission to attend Thanksgiving dinner at a family member's house, indicating that family members under the age of 18 would be present, but that plaintiff would be supervised by other adults at all times in accordance with the treatment plan coordinated by defendant No. 7 and Alice Nowark, plaintiff's treatment provider. The request was denied in contradiction to plaintiff treatment plan by defendant No. 7.

31. On or about December, 2016 during a visit of plaintiff's residence (same address as in Paragraph 28) defendant No. 7 said, "What is the purpose of decorating other than to attract children, you child rapist?" and "You can not have any Christmas ornaments because you're a pedophile." Defendant No. 7 made additional derogatory comments to plaintiff including but not limited to calling him a, "...scumbag," a "...fucking monster," a "...liar," and stating that, "...nobody believes a pedophile."

32. On or about December, 2016, plaintiff reported to parole at the Fulton Police Station, Fulton, N.Y. and asked defendant No. 7 permission to attend Christmas dinner at a family member's house, indicating that family members

under the age of 18 would be present, but that plaintiff would be supervised by other adults at all times in accordance with the treatment plan coordinated by defendant No. 7 and Alice Nowark, plaintiff's treatment provider. The request was denied in contradiction to plaintiff's treatment plan by defendant No. 7.

33. On or about January , 2017 during a visit of plaintiff's residence (same address as in Paragraph 28), defendant No. 7 indicated she would no longer be plaintiff's parole officer, and that somebody would contact plaintiff shortly as her replacement. Defendant No. 7 concluded the visit by saying, "good luck, you fucking monster."

34. On or about January, 2017, during a visit of plaintiff's residence (same address as in Paragraph 28), defendant No. 8 indicated that he was plaintiff's newly assigned parole officer. While reviewing plaintiff's file defendant No. 8 asked, "why are you on GPS, and why haven't you been driving?" When plaintiff could not answer the questions, defendant No. 8 indicated, "There is no valid reason in your file," and, "This is one of the reasons [defendant No. 7] is no longer in our office." Additionally defendant No. 8 commented, "There are comments and opinions about you in your file that are very judmental." Defendant No. 8 indicated he would investigate further regarding the removal of GPS monitoring, and restoring of driving privileges. Plaintiff asked if he could be allowed to visit his Children according to the Court Order he had obtained and defendant No. 8 requested that the plaintiff produce a copy of the Family Court Order during his next report date.

35. On or about January, 2017, plaintiff reported to Oswego County Sheriff's Department to meet with defendant No. 8 as he was ordered to do, and produced a true certified copy of plaintiff's Family Court Order of Custody and Visitation on Consent (please see page 30-31). Defendant No. 8 refused to act on the issue of visitation, GPS monitoring, and driving privileges stating that he was, "Only a fill-in" parole officer, and another officer would be assigned to plaintiff, "...in a few weeks."

36. On or about April, 2017, defendant No. 8 ordered plaintiff to take a polygraph test. Defendant No. 8 stated, "If you pass the polygraph, I will make sure you get some privileges back." The test was administered, and plaintiff was found to be non-deceptive.

37. On or about April, 2017, plaintiff reported to the Oswego County Sheriff's Department to meet with defendant No. 8 as he was ordered to do so after the polygraph test was administered. At this meeting plaintiff asked defendant No. 8 if he could visit his children and be re-instated or restored privileges due to the non-deceptive polygraph, and because defendant No. 8 had remained the assigned parole officer for much longer than, "...a few weeks." Defendant No. 8 again denied all requests because he was, "a fill-in" parole officer.

38. On or about May, 2017, during plaintiff's required meeting with defendant No. 8 at the Oswego County Sheriff's Department, plaintiff notified defendant No. 8 about his relationship with Cherri Piscitelli, and supplied defendant No. 8 with all of her contact information. Defendant No. 8 did not place any restrictions on visits between plaintiff and Ms. Piscitelli at that report date.

(13)

39.  On or about May, 2017, plaintiff had learned that he was being supervised by another parole officer, defendant No. 9.

40.  On or about May 2017, during plaintiff initial report date with defendant No. 9, at the Fulton Police Station located in Fulton, N.Y. plaintiff gave a brief outline of all the programs that he had accomplished during his incarceration and while he was released out on parole, i.e. Fatherhood program for Men, relapse prevention program for substance abuse and alcohol, the completion of an intensive therapeutic residential sex offender program and was also found to be non-deceptive on a recent polygraph test; along with negative drug test and the continuation of an offenders' group therapy for sex offenders while released on parole.

41.  Additionally, to paragraph 40, plaintiff asked defendant No. 9 if any of his privileges defendant No. 8 had deferred could be addressed; defendant No. 9 denied all requests at that time; in furtherance, defendant No. 9 requested to meet Ms. Piscitelli and placed visiting restrictions upon her and the plaintiff.

42.  Lastly, during the initial report date in paragraph 40, plaintiff once again, furnished a true certified copy of a final order on petition for custody and visitation on consent (please see page _30-31_ ) to defendant No. 9 in an attempt to exercise his parental rights in maintaining a relationship with his Children; defendant No. 9 immediately denied the plaintiff any/all contact with his children without explanation, despite a standing custody and visitation order.

43.  On or about June 2017, defendant No. 9 met with plaintiff's significant other, Cherri Piscitelli at the Fulton Police Station located in Fulton, N.Y.; during this meeting defendant No. 9 discussed plaintiff's criminal offense, his stipulations and was informed of Ms. Piscitelli's two children and that her son was under the age of 18.  Also, Ms. Piscitelli requested if she could live with plaintiff, defendant No. 9 stated in sum or in part, "in three months, I will allow you to live together."

44.  Shortly thereafter, during a home visit at the plaintiff's residence located in Phoenix N.Y. defendant No. 9 informed plaintiff of his discussion with Ms. Piscitelli, in which, confirmed his statement in paragraph 43 on the future living arrangements with Ms. Piscitelli.

45.  On or about September 2017, during a required report date at the Fulton Police Station located in Fulton, N.Y. plaintiff requested permission from defendant No. 9 to move in with Ms. Piscitelli and recited his promise three months prior; defendant No. 9 denied the request; plaintiff then expressed the life changes that Ms. Piscitelli had made to accommodate his promise and the life she wanted to live with plaintiff; defendant No. 9 did not care and in his response stated in sum or in part, "lets give it 3 more months."

46.  On or about November 2017, plaintiff reported to parole at the Fulton Police Station located in Fulton, N.Y. and asked defendant No. 9 permission to attend Thanksgiving dinner at a Family member's house, indicating that

family members under the age of 18 would be present, but that plaintiff would
be supervised by other adults at all times in accordance with the treatment
plan coordinated by parole and Alice Nowark, plaintiff's treatment provider.
The request was denied in contradiction to plaintiff's treatment plan and
conditions.

47. On or about December 2017, during a required report date at the Fulton
Police Station, located in Fulton, N.Y. plaintiff informed defendant No. 9
that he was engaged to Ms. Piscitelli, and once again, requested permission to
live with her as discussed and agreed upon; defendant No. 9 denied plaintiff
due to Ms. Piscitelli having a son under the age of 18.

48. On or about December 2017, plaintiff reported to parole at the Fulton
Police Station, located in Fulton, N.Y. and asked defendant No. 9 permission
to attend Christmas dinner at a family member's house, indicating that family
members under the age of 18 would be present, but that plaintiff would be
supervised by other adults at all times in accordance with the treatment plan
coordinated by parole and Alice Nowark, plaintiff's treatment provider. The
request was denied in contradiction to plaintiff's treatment plan and
conditions.

49. On or about January 2018, defendant No. 9 ordered plaintiff to be
administered a polygraph test. Plaintiff complied. Before the polygraph
began, a parole officer (person administering the test) went over the rules
with plaintiff, with one being in sum or in part that "each question will be
asked only once, there will be four questions, after the four questions are
asked one time we will take a break then I will ask you the same four
questions once and that will conclude the polygraph test." One question on
this particular test was in sum or in part "have you ever lied to your parole
officer?" Plaintiff's response was "no." He was found to be non-deceptive in

answering the question. Another question was "Have you ever had any contact with your girlfriend's (Ms. Piscitelli) son?" Plaintiff's response was "no." A few seconds later the test administrator repeated the same question. "Have you ever had any contact with your girlfriend's (Ms. Piscitelli) son?" Again, plaintiff's response was "no." Then the remainder of the four questions were asked and plaintiff was found non-deceptive in answering them. At the conclusion of the test the administrator informed plaintiff that he was found deceptive on one question and asked if he could identify which question he might be lying about. Plaintiff responded by stating he did not lie on any question. The administrator (Parole Officer) then informed plaintiff he was deceptive on the question of having contact with his girlfriend's son, and asked why that was. Plaintiff immediately asked why she had asked the same question twice and that that could have had something to do with it, because it may have made him nervous due to the fact that in her rules she said she was only going to ask the question once. The administrator (Parole Officer) said no. Plaintiff then asked if both times she asked the same question if they were deceptive. The administrator said it did not matter, all she needed was the last time she asked, which allegedly was found to be deceptive. Shortly thereafter, plaintiff and defendant No. 9 (Rhodes) reviewed the outcome and in doing so in the plaintiff's defense asked Rhodes in sum or in part, "during every report date don't you ask me if I came into any contact with any minor children?" Rhodes answered, "Yes I do." Then the Plaintiff asked how does it make sense that he was found non-deceptive on the question "have you ever lied to your parole officer?" But found to be deceptive on the question, "Have you ever had any contact with your girlfriend's son?" The Plaintiff then explained the chain of events and how he was asked the same question twice when he was told he would only be asked four questions once

(17)

before taking a break and doing it again. Rhodes said he would look into the matter and let plaintiff know. However, the plaintiff never received an explanation on the matter and was told that Rhodes was going to impose new restrictions for the deceptive polygraph.

50. On or about January 2018, defendant No. 9 created and/or modified special condition 13(bb) (please see page  35   ) which restricted plaintiff from entering and/or being around his fiancee's residence; in plaintiff's attempt to avoid this condition to be imposed upon him, plaintiff expressed that Ms. Piscitelli was his main support, and to restrict him from seeing her would be devastating since parole did not allow plaintiff around the rest of his family members, due to them having children under the age of 18.

51. On or about February 2018, during plaintiff's required report date at the Fulton Police Station located in Fulton, N.Y., plaintiff informed defendant No. 9 that he had successfully completed the mandated sex offenders' program coordinated by parole and Alice Nowark; in addition, due to his completion, plaintiff yet again, requested to have visitations with his children and to be able to have supervised visits with family members under the age of 18; defendant No. 9 denied plaintiff any/all contact with them.

52. On or about February 2018, plaintiff's fiancee and his mother, Susan Rattray wrote letters to Anthony J. Annucci, Acting Commissioner of DOCCS (defendant No. 1) to address issues with parole isolating and restricting plaintiff from maintaining a relationship with family that love and support him; Deputy Commissioner acting on the behalf of Annucci, Steven A. Claudio responded to the complaint, but failed to consider the effect on the plaintiff and the impact on his rehabilitative needs to be successful in society.

53.  In addition to paragraph 51, Susan Rattray feared her son [plaintiff] was going backwards.  Therefore, she decided to write a letter (please see page 36-37 ) to Defendant No. 1 (Annucci) in hopes to shed light and obtain answers on the harsh restrictions her son endured for doing good on parole.  In this letter, Ms. Rattray brought to Annucci's attention three (3) concerns she had; 1.) The GPS monitoring device (ankle bracelet) and the excessive period imposed, 2.) Contact Restrictions with Fiancee (Ms. Piscitelli) and 3.) Contact Restrictions with Family.  She continues to point out "all the good" that plaintiff is doing on parole, e.g., maintained employment, completed A.A., weeks away from completing his sex offender treatment program, how he passed both lie detector tests and maintain good behavior for two years. However, they are totally disregarded because he can't "live with his fiancee, visit with his family, have the ankle bracelet removed, and pictures of his children on the wall." Ms. Rattray also indicates that these restrictions are "wrongful" and undermines all plaintiff's rehabilitative efforts.

54.  In a letter dated March 13, 2018 (please see page 38  ) defendant No. 2 (Claudio) is responding to Susan Rattrays letter (please see page 36-37 ) on the behalf of defendant No. 1 (Annucci).  In this letter, Claudio clearly indicates he is responding to the conditions that the plaintiff has been subjected to while being supervised.  He also points out that DOCCS supervises very closely and an individualized case supervision plan to ensure that the parolee has the best opportunity to successfully re-enter and remain in the community while minimizing public risk.  Claudio continues his letter by adding plaintiff's individualized plan (special parole conditions) which include, GPS monitoring, polygraph examinations, restrictions on residence and contact with individuals, and curfew.  Also, he states that "results of polygraph examinations can influence the duration and degree that these

strategies are enforced," due to a polygraph test that plaintiff allegedly failed in January 2018 (please see paragraph 49) in direct relation to contact with his fiancee's child; which resulted in enhancing plaintiff's curfew and limiting contact or residing with his fiancee. Claudio even admits these factors are regularly reviewed by the parole officer with the supervisor to determine the appropriateness of each being used for the benefit of the Parolee and society. In addition, Claudio states, "It is expected that when the results of future polygraph examinations are favorable, consideration can be given to permit more frequent contact and/or residence with his fiancee and to relax the curfew hours and GPS monitoring." [plaintiff was found to be non-deceptive on a prior polygraph test in April 2017 yet he was still denied requests for visitations with his children and to be re-instated or restored privileges (such as; driving and removal of GPS monitoring)(please see page 13-14) which in the case her, clearly contradicts Claudio's policy and/or expectation of a favorable polygraph examination] This response was vague. It did not address Susan Rattray's letter as to why GPS monitoring was placed upon plaintiff, why he is not allowed around family or to have pictures of his children on the wall and the harsh restriction of not being able to go to his fiancee's house anymore, when it is outright wrongful and undermines all his rehabilitative efforts.

55. In a letter dated March 23, 2018 (please see page ___39___ ) defendant No. 2 (Claudio) is responding to Ms. Piscitelli's (plaintiff's fiance) letter on the behalf of defendant No. 1 (Annucci). In this letter, Claudio acknowledges she is supportive of plaintiff and that he is fortunate to have her support to assist in his successful reintegration into the community. Claudio also acknowledges a listing of several accomplishments Mr. Lando (plaintiff) has made since being released to supervision and was asked when plaintiff will

receive or be restored privileges for these accomplishments. Claudio was also asked if the plaintiff is being punished by having restrictions placed on contact with her, extended curfew hours, and his still being on GPS. In Claudio's response he alleges DOCCS takes into consideration many factors when making casework decisions. The results of polygraph examinations are significant and can also influence these decisions and that these factors are regularly reviewed by the Parole Officer with the supervisor to determine the appropriateness of each to benefit the parolee and society. It is expected that when the results of future polygraph examinations are faborable, consideration can be given to permit more frequent contact and/or residence with Ms. Piscitelli and to relax the curfew hours and GPS monitoring. Claudio's response was very vague and did not address the issues of parole isolating plaintiff with GPS monitoring and restricting contact with her. Although, he does allege "many factors" are taken into consideration when making casework decisions. However, the listing of several accomplishments the plaintiff has made together with a prior polygraph examination found to be non-deceptive (please see page 13) was not enough to re-instate or restore any privileges, but one question on a polygraph examination in January 2018 (please see paragraph 49) that was asked twice and in contradiction to a similar question that plaintiff was found to be non-deceptive of, established enough grounds to place more restrictions upon the plaintiff that involve people that love and support him and has an impact on his rehavilitative needs to be successful in society.

56. On or about May 2018, plaintiff was violated on parole based upon 11 charges; during plaintiff's parole hearing located at Oswego County Jail, in Oswego, N.Y., plaintiff plead quilty to two charges, going into an establishment where alcohol is served and sold as a primary purpose of the

(21)

location; and failing to abide by curfew; the remainder of the charges were withdrawn/dismissed and the plaintiff was ordered to serve a 24 month-time assessment.

57.  On or about November 8, 2018, plaintiff was incarcerated at Gowanda Correctional Facility located in Gowanda, N.Y.; during plaintiff's sex offenders' treatment, treatment provider ORC Janique Lowe, informed plaintiff during a structure-group session with other offenders' present, by stating in sum or in part, "according to the notes in your parole file, you were placed on GPS monitoring because it was reported that you had visited your daughter at her Mother's house when nobody was home."  Plaintiff denied these allegations.

### FIRST CLAIM

#### (Interference with Familial Association)

58.  Plaintiff replead and reallege paragraph 1 through 57, inclusive, of this complaint, each of which is incorporated by this reference.

59.  By actions of defendants and each of them, as described above, carried out in their official and/or individual capacities and under color of the law, have intentionally subjected plaintiff to deprivation, infringement, and abridgment of rights and privileges and immunities secured by the constitution and laws of the United States including, but not limited to;

a.  the right to form and preserve certain intimate and familial human relationships without intrusion by the State; as guaranteed by the First Amendment to the United States Constitution; and

b.  the fundamental liberty interest of natural parents in the care, custody, and management of their Children as guaranteed by the First Amendment to the United States Constitution; and

(22)

    c. the right of liberty, property and happiness guaranteed by the United
States Constitution.

60. The acts set forth in this complaint constitute a policy, practice, or
custom of ordering, ignoring, encouraging, causing, tolerating, sanctioning,
and/or acquiescing in the violation by defendants of the Constitutional rights
of plaintiff.

61. By actions of defendants and each of them, as described above, deprived
plaintiff of literally any/all contact with his Children by creating and/or
imposing special condition 13(j), absent factual justification and in defiance
of the provisions of a lawful Family Court Order.

62. In furtherance, defendant No. 9 as described above, restricted contact
between plaintiff and his fiancee, by creating and/or imposing special
condition 13(bb), where it had no relation to his criminal history or the
State's interest.

63. Plaintiff aver that the actions described above, taken under color of law
by defendants, and each of them, constituted unlawful and actionable
deprivation and discrimination, in that among other things, defendants
repeatedly and unnecessarily created parole conditions that restricted and/or
barred plaintiff from his family roots, and the love, care and support of his
Children, family and love ones.

64. As a further proximate result of the acts and omissions of each of
defendants, plaintiff has suffered and continues to suffer severe humiliation,
mental anguish, emotional and physical distress which has manifested in
physical symptoms of nausea, headaches, sleeplessness and sickness.

65. The acts and omissions of each of defendants were carried out in a
deliberated, calculating, willing, intentional and malicious manner, and with
the specific intent to injure and oppress plaintiff; by reason of this

intentionally wrongful and unlawful conduct, plaintiff is entitled to injunctive relief from defendant(s) No. 1-9 and monetary damages from defendant(s) No. 4-9.

### SECOND CLAIM

### (Arbitrary and Capricious)

66.  Plaintiff replead and reallege paragraph 1 through 65, inclusive, of this complaint, each of which is incorporated by this reference.

67.  By actions of defendants as described above, carried out in their official and/or individual capacities and under color of the law, denied plaintiff his right to equal protection of the laws guaranteed under the Fourteenth Amendment of the United States Constitution, including but not limited to;

a.  Immediately upon plaintiffs' release from prison, defendant No. 7 constantly threatened, berated, harassed, ridiculed, dehumanized and discriminated against plaintiff; and

b.  defendant No. 7 barred any/all contact between plaintiff and his Children, by creating, modifying and/or imposing special condition 13(j), in defiance of the provisions of a lawful Family Court Order; and in absent of factual justification to do so; and

c.  as a further act in barring plaintiff from his Children, defendant No. 7 intentionally, willfully and arbitrarily retaliated against plaintiff for his attempts to have a meaningful relationship with his Children by initiating and pursuing a scheme to threaten, restrict, harass and punish plaintiff; defendant No. 7 achieved