this by conducting false accusations to report to her superiors in hopes to obtain permission to place plaintiff on a GPS monitoring device; and

      d. defendant No. 7 discriminated against plaintiff in repeatedly and unnecessarily dehumanized, belittled and degraded plaintiff as an "under-class" of society; and

      e. defendant No. 9 as described above, acted arbitrary and capricious by creating, modifying and/or imposing special condition 13(bb), which restricted plaintiff contact with his fiancee despite it is not in relation to plaintiff's criminal history or the States interest.

68. By actions of defendants, and each of them, as described above, carried out in their official and/or individual capacities failed to adhere to their own Official Policy, as set forth in directive #9601 Parental Contact Protocol, including but not limited to;

      a. defendants failed to conduct an investigation to determine "if" plaintiff should be restricted or barred from any/all contact with his Children; and

      b. defendants over-ruled the authority and the provisions of a lawful Family Court Order without the request of judicial intervention; and

      c. defendants failed to notify plaintiff in writing their decision; which deprived plaintiff of any means to appeal paroles decision.

69. By actions of defendants, and each of them, as described above, acted and continues to act arbitrary and capricious by creating, modifying and/or imposing conditions that are not related to plaintiff's criminal history or the States interests.

(25)

70. As a further proximate result of the acts and omissions of each of the defendants, plaintiff has suffered and continues to suffer severe humiliation, mental anguish, emotional and physical distress which has manifested in physical symptoms of nausea, headaches, sleeplessness and sickness.

71. The acts and omissions of each of defendants were carried out in a deliberated, calculating, willing, intentional and malicious manner, and with the specific intent to injure and oppress plaintiff; by reason of this intentionally wrongful and unlawful conduct, plaintiff is entitled to injunctive relief from defendant(s) No. 1-9 and monetary damages from defendant(s) No. 4-9.

### THIRD CLAIM

### (Substantive Due Process)

72. Plaintiff replead and reallege paragraph 1 through 71, inclusive, of this complaint, each of which is incorporated by this reference.

73. By actions of defendants, and each of them, as described above, carried out in their official and/or individual capacities and under color of the law, have intentionally subjected plaintiff to deprivation, infringement, and abridgment of rights and privileges and immunities secured by the Constitution and laws of the United States including, but not limited to;

   a. the rights to equal protection of the laws as guaranteed by the Fourteenth Amendment of the United States Constitution; and

   b. the fundamental liberty interest of natural parents in the care, custody, and management of their children, that is protected by Substantive due process; and

   c. the right to form and preserve certain intimate and familial human relationships without intrusion by the State.

74. Defendants deliberately barred plaintiff any/all contact with his

(26)

Children, in defiance of the provision of a lawful Family Court Order, judicial intervention and factual justification to do so.

75. In furtherance, defendants deprived plaintiff access to family members and cohabitation with a partner of the opposite sex; defendants failed to provide these protective factors that is conducive to relapse prevention and ensures that plaintiff has someone who can offer support if needed.

76. As a further proximate result of the acts and omissions of each of the defendants, plaintiff has suffered and continues to suffer severe humiliation, mental anguish, emotional and physical distress which has manifested in physical symptoms of nausea, headaches, sleeplessness and sickness.

77. The acts and omissions of each of defendants were carried out in a deliberated, calculating, willing, intentional and malicious manner, and with the specific intent to injure and oppress plaintiff; by reason of this intentionally wrongful and unlawful conduct, plaintiff is entitled to injunctive relief from defendant(s) No. 1-9 and monetary damages from defendant(s) No. 4-9.

## FOURTH CLAIM

### (Procedural Due Process)

78. Plaintiff replead and reallege paragraph 1 through 77, inclusive, of this complaint, each of which is incorporated by this reference.

79. By actions of defendants, and each of them, as described above, carried out in their official and/or individual capacities and under color of the law, have intentionally subjected plaintiff to deprivation, infringement, and abridgment of rights and privileges and immunities secured by the constitution and laws of the United States including, but not limited to;

   a. the right to equal protection of the laws as guaranteed by the Fourteenth Amendment of the United States Constitution; and

 b. the right to be free from deprivation of a significant life, liberty, or property interest, which is protected by the Fourteenth Amendment of the United States Constitution; and

 c. the fundamental right to be heard and challenge the deprivation of a meaningful relationship between Father and Son, that is guaranteed and protected by due process of the law under the Fourteenth Amendment of the United States Constitution.

80. Defendants did not conduct an adequate investigation; considering the fact, that plaintiff had a prior history with his Children, including, living together, visitation during his incarceration, visitations while on parole and a standing lawful Family Court Order, together with the above-said completed programs.

81. Defendants did not notify plaintiff in writing of their decision; which plaintiff was not afforded the opportunity to challenge and/or appeal paroles decision in barring plaintiff contact with his Children.

82. Defendants deprived plaintiff any/all contact with his Children without a pre- or post deprivation hearing, in light of, the validity and provisions of a lawful Family Court Order; defendants therefore violated plaintiff's procedural due process.

83. As a further proximate result of the acts and omissions of each of the defendants, plaintiff has suffered and continues to suffer severe humiliation, mental anguish, emotional and physical distress which has manifested in physical symptoms of nausea, headaches, sleeplessness and sickness.

84. The acts and omissions of each of defendants were carried out in a deliberated, calculating, willing, intentional and malicious manner, and with the specific intent to injure and oppress plaintiff; by reason of this intentionally wrongful and unlawful conduct, plaintiff is entitled to

(28)

injunctive relief from defendant(s) No. 1-9 and monetary damages from defendant(s) No. 4-9.

85. Plaintiff has not requested relief in State or Federal court related to the above-said action.

86. Plaintiff has never filed a law suit in any State or Federal court.

WHEREFORE, plaintiff request judgment against defendants, and each of them, for:

1. Actual and/or compensatory damages in favor of the plaintiff and against each defendant in the amount to be ascertained at the time of trial;

2. Interest on any compensatory damages awarded;

3. Injunctive relief against defendants for any further barring of contact with plaintiff's and his Children; and any/all parole conditions that restricts plaintiff's from living with his wife or contact with her; and, any other parole condition that is not in direct relation to plaintiff's offense;

4. Reasonable attorney's fees and costs incurred; and

5. Such other and further relief as the court may deem just and proper.

Dated: December 15, 2019

SWORN TO BEFORE ME THIS ____
DAY OF _____, ____.

_____
NOTARY PUBLIC

Timothy E. Lando, Jr.
Timothy E. Lando, Jr.
Din # 06A5781
Marcy Correctional Facility
P.O. Box 3600
Marcy, N.Y. 13403-3600

(29)

D.R.L. § 240

ORDER ENTERED

MAY 1 2 2016

OSWEGO CO. FAMILY COURT

At a term of the Family Court of the State of New York, held in and for the County of Oswego, at Public Safety Center, 39 Churchill Road, Oswego, NY 13126, on April 21, 2016

PRESENT: Hon. James K. Eby

In the Matter of a Custody/Visitation Proceeding

Jessica Kirkland,

       Petitioner,

against

Timothy Lando Jr.,
Michele Vargason,

       Respondents.

File #: 6009
Docket #: V-00971-16
    V-00972-16

FINAL ORDER ON
PETITION FOR CUSTODY
AND VISITATION
ON CONSENT

**NOTICE: YOUR WILLFUL FAILURE TO OBEY THIS ORDER MAY RESULT IN INCARCERATION FOR CRIMINAL CONTEMPT.**

Jessica Kirkland having filed a petition on April 14, 2016, pursuant to Article 6 of the Family Court Act, requesting an order awarding custody of the following minor child(ren):

| Name | Date of Birth |
|---|---|
| C███ M. L███ | ███ 2004 |
| T███ E. L███ | ███ 2002 |

And Timothy Lando Jr. appearing pro se and Michele Vargason, appearing pro se, and having been served with a copy of the petition, and Michele Vargason have agreed to the Relief Requested in the Petition and Respondent, Timothy Lando, Jr. having appeared pro se and entered a denial to the relief requested in the petition, and to show cause why an order of custody and visitation should not be granted; and the Attorney for the Child, Pamela Munson, Esq., also having appeared;

And the Court having searched the statewide registry of orders of protection, the sex offender registry and the Family Court's child protective records, and having notified the attorneys for the parties and for the child of the results of these searches;

And the Court having considered and relied upon the following results of these searches in making this decision:

And the matter having duly come on to be heard before this Court;

(30)

Docket No: V-00971-16
V-00972-16
GF18

NOW, after examination and inquiry into the facts and circumstances of the case and upon consent of the parties and the Attorney for the Child; it is

ORDERED that Jessica Kirkland and Timothy Lando, Jr. shall enjoy joint legal custody of the subject child; physical custody shall be with the Mother, Jessica Kirkland; and it is further

ORDERED that Timothy Lando, Jr. shall have visitation at prison at times to be agreed upon between the parties, with transportation to be provided by the Father's family members; and it is further

ORDERED that the Father can call the children at 7:00 p.m. any evening at his expense; and it is further

ORDERED that the Father is entitled to written communication with the subject children; and it is further

ORDERED that upon the Father's release from prison he shall have reasonable rights of visitation as the parties agree.

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE ATTORNEY FOR THE CHILD UPON THE APPELLANT, WHICHEVER IS EARLIEST.

Dated: April 22, 2016

ENTER

James K. Eby

Hon. James K. Eby

Check applicable box:
☐ Order mailed on [specify date(s) and to whom mailed]: ____________
☐ Order received in court on [specify date(s) and to whom given]: ____________

CC: Graham Benton Seiter, Esq. email
Pamela Anne Munson, Esq., Attorney for Child email
Michele Vargason, Respondent mail 315 Co. Rt. 55 Fulton, NY 13069
Oswego County Dept of Social Services - Interested Party email

(31)

Clerk's Certification

I, (Deputy) Clerk of the Family Court of the State of New York, County of Oswego, do hereby certify that I have compared the foregoing copy of an (Order) (Judgment) with the original thereof filed in this Court and that the same is a true and complete copy of such original. In witness whereof, I have here unto set my hand and affixed the seal of said Court this 5 day of September 20 18.

(Deputy) Clerk of the Court

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
SPECIAL CONDITIONS OF RELEASE TO COMMUNITY SUPERVISION

Name: LAMBO, Timothy    DIN#: 06A5781    NYSID: 06633410Y
Date of Release: 05/11/16    Supervision Maximum: 05/10/21

I, Timothy LAMBO, acknowledge that under the provisions of my Conditions of Release (that the above Special Conditions have been imposed and that these Special Conditions will remain in effect until the termination of my legal period of supervision: 05/10/21)

Unless otherwise amended, in writing, by the Department of Corrections and Community Supervision.

33. I will have no in person contact, or attempt to contact, sessica BAKER AND any CHILDREN, EITHER in person or through a 3rd party. This by means of letter, telephone, cell phone, 3rd party, electronic means or any other methods with out the knowledge and written permission of my parole officer. Failure to follow this will be a violation of my parole and I can be arrested.

I hereby acknowledge I have read and understand the above Special Conditions to my release and that I have received a copy of said Special Conditions.

Signed this ___ day of _____ 20__

Parolee: _____    Witness: _____

COPY TO RELEASEE   COPY TO FILE   COPY TO AREA OFFICE   COPY TO CENTRAL OFFICE

32

# STATE OF NEW YORK
## DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
### SPECIAL CONDITIONS OF RELEASE TO COMMUNITY SUPERVISION

Name: LANDO, Timothy   DIN# 06A5781   NYSID: 08633410Y

Date of Release: 08/11/16   Supervision Maximum: 05/12/21

I, LANDO, Timothy, acknowledge that under the provisions of my Conditions of Release that the following Special Conditions have been imposed upon me and that these Special Conditions will remain in effect until the termination of my legal period of supervision, 05/12/21. Unless otherwise amended, in writing by the Division of Parole.

13(z1): I will be in my approved residence between the hours of 8:00pm to 7:00am, seven days per week.

13(z2): I will not tamper with the EM/GPS equipment in any way.

13(z3): I will acknowledge and immediately comply with any notification received on the Bracelet (VIBRATION OR AUDIBLE TONE) and I will immediately contact my parole officer.

13(z4): I understand that I must have prior approval from my parole officer for any changes to my work, school or therapy schedule.

13(z5): I will not enter any area defined by my parole officer as an exclusion zone.

13(z6): I will be in/at any designated location (inclusion zones) during the time frames specified by my parole officer.

13(z7): I understand and agree to charge my Bracelet twice (2) a day, 12 hours apart, for a min. of 40 minutes.

13(z8): I understand and agree that I must return all EM equipment to NYS Parole or any authorized representative immediately upon request. This includes the transmitter and charging cord. If there is any damage due to my own negligence, I can be held fiscally and criminally responsible.

13(z9): I will not submerge my GPS unit under water for any reason. If for any reason my GPS unit becomes submerged I will immediately contact my parole officer.

13(z10): I understand that while on GPS supervision, my whereabouts are being tracked and stored as data. This will allow NYS Division of Parole to verify my whereabouts at any given time.

TRANSMITTER # 12-762825

I hereby certify that I have read and understand the above Special Conditions of my release and that I have received a copy of these Special Conditions.
Signed this ___ day of OCTOBER 2016
Releasee: _Timothy Lando_   Witness: _[signature] #2228_

COPY TO RELEASEE, COPY TO AREA OFFICE, COPY TO CENTRAL OFFICE

(33)

STATE OF NEW YORK
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
SPECIAL CONDITIONS OF RELEASE TO COMMUNITY SUPERVISION

Name: LANDO, Timothy    DIN# 06A5781    NYSID: 08633410Y
Date of Release: 08/11/16    Supervision Maximum: 05/10/21

I, Timothy LANDO, acknowledge that under the provisions of my Conditions of Release that the following Special Conditions have been imposed upon me and that these Special Conditions will remain in effect until the termination of my legal period of supervision, 05/10/21, Unless otherwise amended, in writing by the Division of Parole.

13(z1): I will be in my approved residence between the hours of 8:00pm to 8:00am, seven days per week.

13(z2): I will not tamper with the EM/GPS equipment in any way.

13(z3): I will acknowledge and immediately comply with any notification received on the Bracelet (VIBRATION OR AUDIBLE TONE) and I will immediately contact my parole officer.

13(z4): I understand that I must have prior approval from my parole officer for any changes to my work, school or therapy schedule.

13(z5): I will not enter any area defined by my parole officer as an exclusion zone.

13(z6): I will be in/at any designated location (inclusion zones) during the time frames specified by my parole officer.

13(z7): I understand and agree to charge my Bracelet every 8 hours, for a min. of 40 minutes. Failure to follow this rule is a violation of my parole in an important respect.

13(z8): I understand and agree that I must return all EM equipment to NYS Parole or any authorized representative immediately upon request. This includes the transmitter and charging cord. If there is any damage due to my own negligence, I can be held fiscally and criminally responsible.

13(z9): I will not submerge my GPS unit under water for any reason. If for any reason my GPS unit becomes submerged I will immediately contact my parole officer.

13(z10): I understand that while on GPS supervision, my whereabouts are being tracked and stored as data. This will allow NYS Division of Parole to verify my whereabouts at any given time.

I hereby certify that I have read and understand the above Special Conditions of my release and that I have received a copy of these Special Conditions.
Signed this _9_ day of JANUARY 2017
Releasee: [signature] Timothy Lando    Witness: [signature] #2228

COPY TO RELEASEE    COPY TO AREA OFFICE    COPY TO CENTRAL OFFICE

(34)

STATE OF NEW YORK
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
SPECIAL CONDITIONS OF RELEASE TO COMMUNITY SUPERVISION

Name: LANDO, Timothy   DIN# 06A5781   NYSID: 08633410Y

Date of Release: 08/11/16   Supervision Maximum: 05/10/21

I, Timothy LANDO, acknowledge that under the provisions of my Conditions of Release that the following Special Conditions have been imposed upon me and that these Special Conditions will remain in effect until the termination of my legal period of supervision 05/10/21. Unless otherwise amended, in writing by the Department of Corrections and Community Supervision.

13(aa)   I will be in my approved residence between the hours of 7:00 PM - 8:00 AM, five (5) days per week, Monday through Friday. I will be in my approved residence between the hours of 7:00 PM - 8:00 AM, two (2) days per week, Saturday and Sunday.

13(bb)   I will not enter / stay away from 68 Lock Street in Phoenix, New York, without the written permission of my parole officer.

I hereby certify that I have read and understand the above Special Conditions of my release and that I have received a copy of these Special Conditions.
Signed this _22_ day of _Jan_, 18
Releasee: _[signature]_   Witness: _[signature]_

COPY TO RELEASEE, COPY TO AREA OFFICE, COPY TO CENTRAL OFFICE

Susan Rattray
~~[redacted address]~~
Phoenix, NY 13135

February 2, 2018

Anthony J. Annucci, Acting Commissioner
NYS Department of Corrections & Community Supervision
1220 Washington Avenue, Building 2
Albany, NY 12226
Telephone: (518) 457-8126

Dear Honorable Annucci:

I am writing this letter with respect to my son, Timothy Lando, Jr., who is currently on parole since his release two (2) ago and doing well. Timothy has maintained employment from the time of release, completed A.A. and is weeks away from completing his mandatory sex offender treatment program.

The nature of this communication is with regard to the conditions that he has been subject to.

There are a number of things that I wish to address (not just as his mother but as a community member) and many of these concerns I bring to your attention are important. Therefore, I am hopeful, you can or may provide me some relevant answers so that I can best understand "why such conditions exist." Three of my most troublesome concerns are: 1.) The ankle bracelet that as placed on him when he worked for Sysco, which was suppose to be for a 90 day period which is now well over a year; 2.) He is engaged, and cannot live with his fiancee (Cherrie Piscitelli) but she can spend two nights a week with her (Wednesday and Sunday). Cherie was interviewed by his prior parole office, and she clearly indicated that she was fully aware of his sex offender charge and "accepted him for the man he is today." However, she is forced to live in a separate house (the difficulty of this arrangement is outrageous, not to mention the hardship it entails financially). What happens when they are married? and 3.) He is not allowed around family, especially if there are children. This is outright wrongful and undermines all his rehabilitative efforts during his incarcerations and while on parole.

(36)

Page two of two
Mr. Annucci

My son's crime was with a fifteen year old girl, who has forgiven Timothy in her adult lifetime. Allowed him to transition forward and he has. Timothy's Sex Offender Counselor clearly indicated and stated to the Main Parole Office, "the incentives for doing good on parole do not exist in the life of Mr. Lando because, the more good he does, the worse he is treated." She has repeatedly stated, "95% of the participating parolees (with sex offense) in her program have far greater privileges than my son."

I find it extremely difficult to believe that if you maintain good behavior, complete your recommend programming and obey the rules that govern conduct (inside and out) that these factors have no significance impact on the granting of parole and/or privileges. In my son Timothy's case, they are totally disregarded but yet he has been recognized for doing really good on parole. But why can't "he live with his fiancee, visit with his family, have the ankle bracelet removed, and pictures of his children on the wall." This is insane and uncalled for.

I need help to understand "why, after all the good Timothy is doing on Parole that he is going backwards?"

Before closing, my son Timothy has passed both his lie detector test and one of the questions in the last was (recently taken), "Did you never lie to your Parole Office?" And he said, "No." In the turn of events, his curfew was far restricted and most significantly, "he cannot go to his fiancee house anymore," Timothy passed the test, and didn't fail. The gravity of these penalties have an impact especially "when he cannot go to his fiancee's house?" Ms. Piscitelli is a grown woman, does not use drugs or drink, is employed with a good job and is very mature.

Await your response and thanking you in advance.

Sincerely,

Date: February ____, 2018

Susan Rattray

(37)



**NEW YORK STATE | Corrections and Community Supervision**

ANDREW M. CUOMO
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

March 13, 2018

Ms. Susan Rattray
~~[address redacted]~~
Phoenix, New York 13135

Dear Ms. Rattray:

Acting Commissioner Annucci has asked me to respond to your letter to him regarding the conditions to which your son, Timothy Lando, has been subjected while under supervision.

The New York State Department of Corrections and Community Supervision supervises cases very closely and an individualized case supervision plan to ensure that the parolee has the best opportunity to successfully re-enter and remain in the community while minimizing public risk.

The individualized plan includes GPS monitoring, polygraph examinations, restrictions on residence and contact with individuals, and curfew. The results of polygraph examinations can influence the duration and degree that these strategies are enforced, to include enhancing his curfew and limiting contact or residing with his fiancée. In this case, the failure of the polygraph examination was directly related to contact with his fiancée's child.

These factors are regularly reviewed by the Parole Officer with the supervisor to determine the appropriateness of each being used for the benefit of the parolee and society. It is expected that when the results of future polygraph examinations are favorable, consideration can be given to permit more frequent contact and/or residence with his fiancée and to relax the curfew hours and GPS monitoring.

Should your son have any questions he is encouraged to discuss these issues with his Parole Officer.

Sincerely,

*[signature]*

Steven A. Claudio
Deputy Commissioner

cc: Kenneth Gilbert, Regional Director, Central NY Region
Central Files – DIN 06A5781
Reference #20180214-123032

(38)

 **Corrections and Community Supervision**

ANDREW M. CUOMO
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

March 23, 2018

Ms. Cherri Piscitelli
68 Lock Street
Apartment 1A
Phoenix, New York 13135

Dear Ms. Piscitelli:

Acting Commissioner Annucci has asked me to respond to your letter to him regarding questions you have about the supervision of your fiancé, Timothy Lando, Jr.

After reading your letter, it is clear that you are supportive of him. He is fortunate to have your support to assist in his successful reintegration into the community.

You begin your letter by listing several accomplishments Mr. Lando has made since being released to supervision and ask when he will receive or be restored privileges for these accomplishments. You also ask if Mr. Lando is being punished by having restrictions placed on contact with you, extended curfew hours, and his still being on GPS.

The New York State Department of Corrections and Community Supervision takes into consideration many factors when making casework decisions. The results of polygraph examinations are significant and can also influence these decisions.

These factors are regularly reviewed by the Parole Officer with the supervisor to determine the appropriateness of each to benefit the parolee and society. It is expected that when the results of future polygraph examinations are favorable, consideration can be given to permit more frequent contact and/or residence with you and to relax the curfew hours and GPS monitoring.

Should your fiancé have any questions, he is encouraged to discuss them with his Parole Officer.

Sincerely,

*Steven Claudio*

Steven A. Claudio
Deputy Commissioner

cc: Kenneth Gilbert, Regional Director, Central NY Region
    Central Files – DIN 06A5781
    Reference #20180131-135506